Whitehead, J.
Introduction
This is an action brought by the plaintiff to establish her ownership rights in a piece of residential property. The defendants are her daughter and her daughter’s former husband. The factual background of the case is as follows.
In 1978, the defendants, who had not yet married, purchased a two-family home, in Lynn, as joint tenants. At that time, the plaintiff sold her own home and, it is alleged, contributed the proceeds of the sale to the purchase of the two-family home, in exchange for a promise that she be permitted to occupy one floor of the home rent-free for life. Both the plaintiff and the defendants subsequently took occupancy of the home — the plaintiff living on one floor, the defendants living on the other.
*68 The defendants subsequently married and, still later, divorced. Upon the divorce, the Probate Court awarded custody of the couple’s three children to the plaintiffs daughter. However, after further proceedings, custody was ultimately awarded to the plaintiffs former son-in-law. The daughter has vacated the home, and the former son-in-law now occupies one floor with the children. The plaintiff continues to occupy the other floor.
The plaintiff contends that the former son-in-law has sought to remove her from the property and has otherwise acted in a manner inconsistent with her right to occupy the property. She seeks, by way of this action, that the Court declare her to have a one-half interest in fee simple in the property or, at least, to have the right to continue to occupy the property rent-free for the remainder of her life.
The plaintiff filed her complaint on December 12, 1994. On February 23, 1995, the defendant son-in-law (Murphy) filed a counterclaim alleging abuse of process and seeking, as well, reimbursement for use and occupancy of the premises. On December 4, 1995, the plaintiff filed a special motion to dismiss the counterclaim, pursuant to G.L.c. 231, §59H (1994).[1]
For the reasons set forth below, the special motion to dismiss is DENIED.
DISCUSSION
In 1994, over the Governor’s veto, the General Court enacted the so-called Anti-SLAPP statute. G.L.c. 231, §59H. SLAPP is an acronym for “strategic litigation against public participation.” The statute enables a defendant (or as here, a defendant-in-counterclaim) to bring a “special motion to dismiss” if a civil claim against him or her is based on the defendant’s exercise of his or her constitutional right to petition. Contending that the counterclaim against her is based upon her exercise of the right to petition, the instant plaintiff asks this Court to apply the anti-SLAPP statute to the counterclaim. The Court concludes that the scope of the statute does not encompass the circumstances of this case.
The statute defines the right of petition as:
[A]ny written or oral statement made before or submitted to a legislative, executive, or judicial body or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.
On its face, the language would appear broad enough to apply here. However, to construe the anti-SLAPP statute as applicable to the instant case would significantly alter both procedural and substantive law.[2] Absent a clear legislative intent to abrogate the existing law, such a construction should not be lightly undertaken. See Cook v. Hanover Ins. Co., 32 Mass.App.Ct. 555, 560 (1992). Legislation should be interpreted according to the language of the statute “. . . considered in connection with the cause of enactment, the mischief or imperfection to be remedied and the main object to be accomplished . . .” McNeil v. Commissioner of Correction, 417 Mass. 818 (1994). This Court finds no clear indication that the General Court intended such an alteration of the procedural and substantive law in the context presented here.
Several other jurisdictions have enacted legislation similar to the Massachusetts anti-SLAPP statute.[3] The objective has been to protect citizens from lawsuits designed to silence their opposition concerning a matter of public concern. See Protect Our Mountain Environment v. District Court, 667 P.2d 1361, 1370 (Colo. 1984). Indeed, commentators on anti-SLAPP legislation agree that one of the indicia of a SLAPP suit is that it is brought in relation to a communication made to a government body and concerning a substantive issue of some public interest or concern. See “Massachusetts’ Anti-SLAPP Statute,” 3 M.S.L. Law Rev. 41 (1995).
A review of the legislative history surrounding our own anti-SLAPP statute makes it clear that the General Court intended to protect a citizen’s right to speak on an issue of public interest or concern. Citizen participation in public matters was the focus of the floor debate. Incidents described by proponents of the legislation to illustrate the evils which it was designed to remedy were incidents involving citizens sued for speaking out on issues of public concern. “House Floor Debate Minutes,” State House News Service, December 19, 29, 1994. In a State House informational release, a SLAPP suit was defined as “a lawsuit directed at a person or group who has expressed an opinion on a matter of public concern.” Representative David B. Cohen, State House Informational Release “Questions and Answers on SLAPP Suits” (citing Pring, “SLAPPs; Strategic Litigation Against Public Participation,” Pace Environmental L. Rev., vol 7 (1989)).
Thus, it would appear that rather than substantially abrogate the procedural and substantive law with respect to a wide degree of litigation claims, the General Court intended only such changes as were necessary to provide a mechanism for citizens to avoid frivolous lawsuits based upon the exercise of their right to speak on matters of public concern. In a case such as this, where the parties are litigating matters of purely private interest, the policies underlying the anti-SLAPP statute are not implicated. For that reason, the Court concludes that application of the stat *69 ute to the facts of this case is not warranted. Rather, the counterclaim of the defendant Murphy is governed by ordinary principles of procedural and substantive law.
ORDER
The plaintiffs special motion to dismiss is hereby DENIED.

The defendant contends that the motion is untimely. However, the Court has the discretion under §59H to permit a late filing, and it does so here.

The Governor expressed his concern about the broad language of the anti-SLAPP statute and was quoted as saying that it would substantially alter the “balanced and long settled law” and that it was a “bludgeon when a scalpel would do.” 1994 House Doc. No. 5570 at 3 and House Doc. No. 5604.
In the context of this case, the statute would add an element not normally required in the proof of an abuse-of-process claim, to wit: that the use of process was “devoid of any reasonable factual support or any arguable basis in law.” It would also shift the burden of proof, at the motion to dismiss stage, to the plaintiff-in-counterclaim rather than the defendant-in-counterclaim, and it would require him to make a substantive factual showing at that stage, rather than relying merely on the allegations of the complaint, as is usually the case.

See, e.g., Cal. Civ. Proc. Code §426.26 (West 1993); Del. Code Ann. tit. 10 §8136- 8138 (1992); Minn. Stat. §554.010.04 (1994); R.I. Gen. Laws §9-33-1, 2(1993): N.Y. Civil Rights Law §70-a (McKinney 1992 & Supp. 1995).