Whitehead, J.
This matter comes before the court on the defendants’ special motion to dismiss pursuant to G.L.c. 231, §59H.[2] In the underlying action, the plaintiff seeks to recover damages from the defendants for their alleged violations of G.L.c. 93, §5 (the Massachusetts Antitrust Act), and G.L.c. 93A, §11 (the Massachusetts Consumer Protection Act). For the reasons set forth below, the defendants’ special motion to dismiss is ALLOWED.[3]
BACKGROUND
The pleadings and the supporting and opposing affidavits reveal the following:
In 1995, the plaintiff, Andover Liquors, Inc. (“Andover Liquors”), dba The Vineyard, applied to the Board of Selectman of North Andover for a license to sell beer and wine at a location on Route 114, diagonally across from Merrimack College. The individual defendants, William Burliss (“Burliss”) and Salvatore Messina (“Messina”) are residents of North Andover. Burliss is a director, officer and employee of defendant Den Rock Liquors, Inc. (“Den Rock Liquors”); and Messina is a director, officer and employee of Messina Liquors, Inc. (“Messina Liquors”). Den Rock Liquors and Messina Liquors are both located in North Andover.
The issuance of a license to Andover Liquors was opposed by numerous residents of North Andover. Charles Lessard (“Lessard”), a resident of North Andover, initiated' a petition stating that opposition in writing. Employees of Den Rock Liquors and Messina Liquors actively supported the petition drive by soliciting signatures from customers. In addition, Burliss conducted door-to-door solicitations at homes in North Andover.
On October 20, 1995, Richard M. Stanley, the Chief of Police of North Andover (“Chief Stanley”), sent a memorandum to Interim Town Manager Kevin Mahoney (‘Town Manager Mahoney”) in which he stated that the police department had public safety concerns about the issuance of the license, due to heavy traffic on Route 114 and the proximity of the proposed store to Merrimack College. He stated that “Route 114 is a busy roadway and the chance of students crossing the road to purchase alcohol is great, especially at night when visibility for motorists is at its worst.”
By a memorandum dated October 23, 1995, Chief Stanley informed Town Manager Mahoney that he had met with Joseph Hoffman (“Hoffman”), the owner of Andover Liquors, and had discussed the public safety issues with him. Based upon this meeting, Chief Stanley had become satisfied that the store would not present serious public safety problems, due especially to the facts that the store would close at 9:00 p.m. and that it would not sell kegs of beer.
On October 23, 1995, the North Andover Board of Selectmen (“the Board”) held a public hearing at which the issuance of the license to Andover Liquors was considered. Hoffman made a short presentation in which he described the nature of the store; and Chief Stanley spoke in favor of the issuance of the license. The Board voted 3 to 2 in favor of granting a license to Andover Liquors for the sale of beer and wine. Burliss and Messina both attended the meeting, but they arrived after the vote had been taken. Nonetheless, the Board allowed Burliss to present to it the petition in opposition to the granting of the license. The petition contained the signatures of approximately 137 residents of North An-dover, including Burliss and Messina. Burliss told the Board that the petitioners opposed the granting of the license because they believed that there already were enough stores selling beer and wine in North Andover, and because they were concerned about safety problems which could result from the high volume of traffic on Route 114 and the store’s proximity to a college.
On October 28, 1995, Lessard retained Attorney Ramsey A. Bahrawy (“Bahrawy”). On October 30, 1995, Bahrawy attended a meeting of the Board of Selectmen, at which he requested that the Board reconsider the issuance of the license to Andover Liquors. Like Burliss, Bahrawy stated that the petitioners believed that there were enough stores selling beer and wine in North Andover, and that they were concerned with the public safety implications of the store being located on a busy roadway across from a college. The Board, however, did not act upon Bahrawy’s request for reconsideration.
*240 Subsequent to the Board’s failure to act on the request for reconsideration, approximately 180 residents of North Andover, including Burliss, signed a petition to appeal the Board’s issuance of the license to the Massachusetts Alcoholic Beverages Control Commission (“the ABCC”), pursuant to G.L.c. 138, §67. On behalf of the appellants to the ABCC, Bahrawy submitted a memorandum to the ABCC, in which he argued that the issuance of the license “did not serve the public need” or “protect the public good.” Specifically, Bahrawy argued that the Board’s decision was arbitrary and capricious because the Board did not reconsider its vote after receiving the petition. He further argued that the area of North Andover which Vineyard Liquors sought to serve already was served adequately by other licensed stores; that the location of the new store could create a public safety problem; and that the peace and tranquility of abutters would be disturbed by the potential sale of alcohol to college students.
A hearing was held by the ABCC on January 11, 1996. Messina attended the hearing and testified that he believed that issuance of the license could potentially lead to public safety problems. The record before the court does not indicate whether the ABCC has yet ruled upon the appeal.
DISCUSSION
This is the another in a growing line of cases in which the court is asked to grant a special motion to dismiss based upon the so-called “anti-SLAPP” statute.[4] In 1994, the General Court enacted the anti-SLAPP statute over Governor Weld’s veto. St. 1994, c. 283, §1; G.L.c. 231, §59H. SLAPP is an acronym for “strategic litigation against public participation.” The statute enables defendants to bring a “special motion to dismiss” if the civil claims against them are based upon their exercise of their constitutional right to petition the government.
The objective of anti-SLAPP legislation, in Massachusetts and elsewhere, is to protect citizens from lawsuits designed to chill their right to petition concerning a matter of public concern. See, “Massachusetts Anti-SLAPP Statute,” 3 M.S.L. Law Rev. 41 (1995). As a preliminary matter, in order to establish the applicability of the statute, the moving party must show that the “civil claims . . . against said party are based upon said parly’s exercise of its right of petition under the constitution of the United States or of the Commonwealth.” G.L.c. 231, §59H. Once the moving party makes a prima facie showing that the statute applies, the burden of proof shifts to the non-moving party. The court must grant the special motion to dismiss unless the non-moving party shows: “(1) that the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) that the moving party’s acts caused actual injury to the responding party.” Id.
The defendants in this case, as the moving parties, have clearly met their burden of showing that the civil claims against them are based upon their exercise of their right to petition. The anti-SLAPP statute defines “a party’s exercise of its right of petition” as:
[A]ny written or oral statement made before or submitted to a legislative, executive, or judicial body or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.
Id. The plaintiff bases its claims upon actions of the defendants which were integrally related to the defendants’ exercise of their right to petition the government. All of the acts complained of — obtaining signatures on petitions, submitting the petitions to the Board and to the ABCC, testifying before the Board and before the ABCC — fall squarely within the statute’s definition of a party’s exercise of its right to petition.
Because the defendants have met their initial burden, the burden has shifted to the plaintiff to show that the defendants’ exercise of their right to petition was: (1) “devoid of any reasonable factual support or any arguable basis in law, . . . and (2) that the [defendants’] acts caused actual injury" to the plaintiff. G.L.c. 231, §59H (emphasis added). The plaintiff has failed to meet its burden of proof on the first prong of this test.
The fact that the defendants are business competitors of the plaintiff does not, by itself, lead to the conclusion that their petition was devoid of any factual support. In petitioning the Board and the ABCC to prevent the issuance of a liquor license to the plaintiff, the defendants argued that the sale of alcohol at the proposed location could cause safety problems. It is undisputed that the store would be located on a busy roadway, diagonally across from a college. Common sense dictates that such a situation might pose public safety problems. The prevalence of alcohol use among young adults is widely documented, and it is common knowledge among motorists that cars entering and exiting a busy roadway can pose a traffic hazard. Chief Stanley’s initial concern about these very issues is evidence of the reasonableness of the arguments made by the defendants and the other signatories of the petitions. That Chief Stanley changed his opinion after meeting with the owner of the store does not mean that it was unreasonable for other citizens to remain concerned, or that their ongoing concern was devoid of factual support.
*241 Moreover, the defendants had an adequate legal basis for petitioning the Board and the ABCC. The Twenty-First Amendment to the Federal Constitution granted broad power to the States to regulate alcohol. U.S.C.A. Const, art. 1, §8 cl. 3, Amend. 21. Massachusetts has exercised this broad grant of power by extensively regulating the sale, consumption, price, and other use of alcoholic beverages; and by allowing public comment on the issuance of licenses to sell alcohol. See G.L.c. 138, §1 et seq. The defendants petitioned the ABCC pursuant to G.L.c. 138, §67, which allows an appeal to the ABCC by twenty-five taxpayers who are aggrieved by the decision of a local board. G.L.c. 138, §67 (1994 ed.). The defendants made a reasonable, though unsuccessful, argument that the issuance of the license failed to protect the common good, and thus violated G.L.c. 138, §23. In light of the facts discussed above, their contentions clearly had an arguable basis in law.
Because the plaintiff has failed to show that the defendants’ actions were without any factual support or any arguable basis in law, the court need not address the issue of whether or not the plaintiff suffered actual injury due to the defendants’ actions.
The plaintiff argues that the anti-SLAPP statute should not apply because the defendants’ actions, although performed in the context of petitioning a local government board and a state agency, were part of an alleged conspiracy to monopolize the sale of alcoholic beverages in North Andover. The plaintiff alleges that the defendants acted “in concert to effect the denial of a liquor license to the plaintiff.” It argues that the General Court did not intend for the statute to apply in such a situation, and that the court would be applying the statute in an overly broad manner if it were to allow actions undertaken with such an intent to be protected by the veneer of the anti-SLAPP statute. The General Court, however, was well aware of the broad procedural and substantive alterations to the law which enactment of the statute would cause. It enacted the legislation over the Governor’s veto, and despite his statement that the legislation was a “bludgeon where a scalpel would do,” and that it would alter the “balanced and long-settled law.” 1994 House Doc. No. 5570 at 3; and 1994 House Doc. No. 5604. In the view of this court, the statute protects every bona fide exercise of the right of petition, regardless of the motivation of the petitioner, so long as the exercise of the right meets the criteria set forth in the statute.
Accordingly, the court grants the defendants’ special motion to dismiss, and, as mandated by the anti-SLAPP statute, awards the defendants costs and reasonable attorneys fees.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ special motion to dismiss be ALLOWED. The court further awards costs and reasonable attorney’s fees to the defendants. The defendants shall, within twenty days, submit an affidavit of costs and fees. The plaintiff shall have ten days thereafter to respond. The court will then conduct such further proceedings as are necessary to assess costs and fees.

The defendant has also filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Mass.R.Civ.P. 12(b)(6). Because the court grants the special motion to dismiss, it need not rule upon the Rule 12(b)(6) motion.

The plaintiff has filed a motion to permit discovery before the court acts on the special motion. That motion is denied.

See, e.g., Sullivan v. Murphy, Civil No. 94-2866, 5 Mass. L. Rptr. 67 (Essex Super. Ct. March 6, 1996); MFP, Inc. v. Martin, Civil No. 94-6433 (Suffolk Super. Ct. February, 1996); Parekh v. Mascester Co., Inc., Civil No. 94-6330, 3 Mass. L. Rptr. 110 (Middlesex Super. Ct. September, 1995); Wigwam Associates, Inc. v. McBride, Civil No. 92-01570, 4 Mass. L. Rptr. 461 (Worcester Super. Ct. October, 1995); MacLeod v. Rafferty, Civil No. 88-1975 (Worcester Super. Ct. December, 1995); Bisognano v. Jain, Civil No. 94-6879, 4 Mass. L. Rptr. 671 (Middlesex Super. Ct. December 22, 1995).