Lauriat, J.
The plaintiff, State Street Corporation (“State Street”), brought this action against defendants Dean S. Barr, Joshua Feuerman (“Feuerman”), and Richard Goldman, for breach of contract and interference with advantageous business relations arising out of the defendants’ alleged failure to comply with the terms of certain alleged non-competition, non-solicitation, and non-disclosure covenants between State Street and the defendants. In response, Feuerman has asserted counterclaims against State Street for interference with contractual and business relations with his new employer, Banker’s Trust, and abuse of process. Feuerman also seeks a declaratory judgment that the agreements between Feuerman and State Street do not bar him from working for Banker’s Trust, soliciting State Street customers, or soliciting State Street employees. State Street has now moved, pursuant to the Massachusetts anti-SLAPP statute, G.L.c. 231, §59H, to dismiss Feuerman’s counterclaims against it. For the following reasons, State Street’s motion to dismiss is denied.
BACKGROUND
State Street is a financial institution that provides a variety of commercial and consumer financial services. State Street Global Advisors (“SSGA”) is an asset management division of State Street. The defendant was employed as a principal of SSGA until September 1, 1999, when he resigned from State Street to work for Bankers’ Trust, another asset management firm.
On or about September 15, 1997, Feuerman and State Street executed a stock Award Agreement (“Award Agreement”) and a Change of Control Agreement (“Control Agreement”), and on or about October 16, 1998, Feuerman and State Street executed a Long Term Incentive Plan Agreement (“Incentive Plan”) (collectively, “the Agreements”). The Agreements granted Feuerman benefits that would vest if he remained with State Street for a specified period of time. Both the Award Agreement and Control Agreement signed by Feuerman contained covenants not to compete, not to solicit State Street principals or clients, and not to disclose State Street trade secrets or other confidential information. The non-compete covenants provided in part, that:
for a period of eighteen (18) months following termination of employment for any reason, . . . [Feuer-man] shall not engage ... in any manner or capacity as advisor, principal, agent, partner, officer, director, or employee of any of the Top Five (5) (as defined below) institutions, or their subsidiaries.
The non-compete covenants defined the “Top Five" institutions as “the five institutions with the highest value of assets under management as listed in the most recent annual rankings of either Institutional Investor or Pension and Investment magazine,” not including State Street or its subsidiaries. The non-solicitation covenants required Feuerman to refrain, for eighteen months after the termination of his employment, from soliciting business from any client of State Street on behalf of any person or entity other than State Street.
In addition, the Award Agreement and Control Agreement required the defendant to hold in a fiduciary capacity all secret or confidential information, knowledge or data obtained as a result of his employment with State Street.
On September 1, 1999, Feuerman resigned from State Street to work for Banker’s Trust. State Street *192 commenced this action on September 3, 1999, and immediately sought a preliminary injunction. On October 22, 1999, the court (Brassard J.) issued a Memorandum of Decision and Order enjoining the defendants from engaging in certain prescribed conduct.[1] While the court determined that State Street was likely to succeed on its claim that the covenants in the Agreements existed, it also concluded that State Street was not likely to succeed on the merits of its claim that Feuerman violated the non-compete covenants, because Bankers Trust was not a “Top Five” institution within the meaning of the parties’ Agreements. As a result, the court declined to enjoin Feuer-man from working for Banker’s Trust and only enjoined him from soliciting State Street employees.
On October 12, 1999, Feuerman served his Answer and Counterclaim. Count I of the Counterclaim seeks a declaratory judgment that Banker’s Trust is not a “Top Five” financial institution as defined by the parties’ agreements, and that the restrictive covenants in the agreements are otherwise void and unenforceable. Count II alleges that State Street knew that Feuerman had an existing agreement or advantageous business relationship with Banker’s Trust, that despite that knowledge State Street interfered with that agreement, that State Street should have known that Banker’s Trust was not a Top Five financial institution, and that the interference was intentional, malicious and done with unlawful motive or means. Count III alleges an abuse of process. Feuerman asserts that State Street made numerous false allegations, including allegations that Banker’s Trust was a “Top Five” financial institution, that State Street knew or should have known that Banker’s Trust was not a “Top Five” financial institution, and that State Street brought this civil action and motion for preliminary relief for an ulterior and improper purpose, namely to cause economic harm to Feuerman and Banker’s Trust.
DISCUSSION
State Street seeks dismissal of Feuerman’s counterclaims pursuant to G.L.c. 231, §59H, asserting that his counterclaims are premised solely upon State Street’s exercise of its rights to petition to the court for redress of Feuerman’s breach of contract. Feuerman contends that this statute does not apply to the circumstances of this case.
Commonly known as the anti-SLAPP statute,[2] G.L.c. 231, §59H was enacted in response to an increase in meritless actions brought primarily to discourage a parly’s valid exercise of its constitutional rights of freedom of speech and petition for the redress of grievances. Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (1998). Discussing the purpose of the statute, the Supreme Judicial Court stated that “(t]he typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects.” Id.[3] The Court further explained that SLAPP suits target people for “reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law reform lawsuits, and engaging in peaceful boycotts and demonstrations." Id., quoting Pring, SLAPPs: Lawsuits Against Public Participation, 7 Pace Envtl.L.Rev. 3, 5-6, 9 (1989). None of these situations are present in this case.
The anti-SLAPP statute permits a party to bring a special motion to dismiss in a case where the nonmov-ing party asserts civil claims, counterclaims, or cross claims “based on” the moving party’s “right of petition under the constitution of the United States or of the commonwealth.” G.L.c. 231, §59H. Although the Legislature intended to enact broad protection for petitioning activities, not all suits are subject to the statute. Duracraft Corp., 427 Mass. at 162. In order to determine whether the statute applies, the party that seeks protection for its petitioning activities must “make a threshold showing through the pleadings and affidavits that the claims against it are ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Id. at 167-68. The burden then shifts to the nonmoving party to show that both the moving party’s exercise of its right to petition lacked “any reasonable factual support or any arguable basis in law,” and that “the moving party’s acts caused actual injury to the responding party.” Id. at 168; G.L.c. 231, §59H.
State Street’s use of the anti-SLAPP statute in this case is misplaced. State Street seeks to apply G.L.c. 231, §59H to traditional causes of action in employment contexts in which non-competition covenants, non-solicitation and non-disclosure agreements are at issue. The SJC has already rejected such use. In Duracraft, the plaintiff, Duracraft Corp. and defendant, Holmes Products, were direct business competitors. Both businesses had employed the defendant Marino at different times. Shortly after Marino was rehired by Duracraft, he signed a non-disclosure and non-competition agreement with Duracraft. After Ma-rino testified at a deposition in an action between the two corporations, Duracraft sued him for breach of the non-disclosure agreement. The defendants then sought to dismiss that suit pursuant to G.L.c. 231, §59H. However, the Court concluded that the anti-SLAPP statute was not intended “to reach suits such as this one between two corporate competitors involved in other ongoing litigation, where the special motion may have be deployed not to limit ‘strategic litigation,’ but as an additional legal tactic.” Id. at 163.
In Duracraft, the Court also stressed that the phrase “based on” in G.L.c. 231, §59H does not mean “in response to.” Duracraft Corp., 427 Mass. at 168, n. 20. “[Although claims and related pleadings filed in *193 court may be classified as petitioning activities, plaintiffs are not thereby immunized from counterclaims filed in response to the claim.” Id. In the context of employment law, employers such as State Street are not immunized from the typical response of former employees and their new employers who seek to protect the employees’ right to work elsewhere. The anti-SLAPP statute is clearly inapplicable to the present case, since State Street has not met its threshold burden demonstrating that Feuerman’s counterclaims are “based on” the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. See Duracraft Corp., 427 Mass. at 167-68. Feuerman’s declaratory judgment claim (Counterclaim, Count I) is not based on the petitioning activities alone, since the defendant, like State Street, seeks resolution of the respective obligations of the parties.
As to Feuerman’s claims of interference with contractual relations and abuse of process, G.L.c. 231, §59H is not intended to preclude those common law causes of action where conduct implicating the anti-SLAPP statute meets only one element of each of those claims. See Proteon, Inc. v. Digital Equipment Corp., Civil Action No. 98-1533-F, 9 Mass. L. Rptr. 445 (Middlesex Super. Ct. December 31, 1998) (denying G.L.c. 231, §59H motion to dismiss abuse of process, interference with advantageous contractual and business relations, and G.L.c. 93A claims); Biaognano v. Jain, 4 Mass. L. Rptr. No. 30, 671 at 674 (January 4, 1996) (Roseman, J.) (denying G.L.c. 231, §59H special motion to dismiss claims of abuse of process, intentional, reckless or negligent infliction of emotional distress, and interference with advantageous relations); Sullivan v. Murphy, 5 Mass. L. Rptr. 67, 1996 Mass. Super. LEXIS 594 (March 1996) (Whitehead, J.) (G.L.c. 231, §59H inapplicable to abuse of process counterclaim).
To sustain a claim for interference with advantageous contractual and business relations, Feuerman must prove he had a contract with Banker’s Trust, that State Street knowingly induced a breach of that contract, and that State Street’s interference was improper in motive or means. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990). State Street’s use of process, the filing of this action, and its request for injunctive relief to prevent Feuerman from working with Banker’s Trust, satisfies only one of the elements of the cause of action.
Similarly, to sustain a claim for abuse of process, Feuerman must show that State Street’s use of process, the filing of this action, was used to accomplish an ulterior or illegitimate purpose, which resulted in damage. Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775 (1986). In addition, Feuer-man must show that State Street acted with malice. Foley v. Polaroid Corp., 400 Mass. 82, 100 (1987). However, G.L.c. 231, §59H applies only to use of process, not the additional required elements of purpose, damage, and malice. See Proteon, Civil Action No. 98-1533-F (Middlesex Super.Ct. December 31, 1998). As a result, State Street cannot show that Feuerman’s common law counterclaims are based on its petitioning activities alone, with no other substantial basis.
State Street’s use of the anti-SLAPP statute was not “deployed to limit strategic litigation,” but was used as an inappropriate litigation tactic in an attempt to limit traditional employee counterclaims made in response to an employer’s suit. The anti-SLAPP statute simply does not apply in the context of the present action.
ORDER
For the foregoing reasons, Plaintiffs Special Motion to Dismiss the Counterclaims of Defendant Joshua Feuerman is DENIED.

On October 25, 1999, the court (Brassard J.) issued an amended Order on the preliminary injunction [10 Mass. L. Rptr 599], and on November 23, 1999, the court (Brassard J.) issued a further amended Order. Neither order is relevant to the present motion.

"SLAPP" is an acronym for “strategic lawsuit against public participation."

The Court highlighted that the impetus for the introduction of the anti-SLAPP legislation was a 1991 action in which fifteen residents of town of Rehoboth, concerned with the protection of wetlands draining into the Palmer River, signed a petition opposing a permit for construction of six-single family residences. Id. at 461. In response to the petition, the developer sued the petitioners, who incurred significant legal fees before the suit was eventually dismissed. Id.