Erik **KRYSTKOWIAK**, Petitioner,

v.

**W.O. BRISBEN COMPANIES, INC.**, Respondent.

No. 02SC686.

Supreme Court of Colorado, En Banc.

May 24, 2004.

Anderson, Dude & Lebel, P.C., Lenard Rioth, Colorado Springs, Colorado, Attorney for Petitioner.

Hall & Evans, L.L.C., Alan Epstein, Reutzel & Associates, John M. Spillane, Denver, Colorado, Attorneys for Respondent.

Kaplan Kirsch Rockwell, Lori Potter, Denver, Colorado, Attorney Amicus Curiae for The League of Women Voters of Colorado and SLAPP Resource Center.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

In this case, we consider the scope of the First Amendment's protection of a citizen's right to petition the government and the procedural requirements of *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361 (Colo.1984) (*"POME"*). We must determine whether the First Amendment of the United States Constitution protects an individual who is sued in tort for intentional interference with contract as a result of successfully petitioning his city government in both a representative and personal capacity. We also consider whether such an individual, pursuant to a statute awarding attorney fees to a defendant who prevails on a motion to dismiss a tort claim, may recover his attorney fees.

The respondent in this case is a real estate developer, W.O. Brisben Companies ("Brisben"), that proposed to build a large scale apartment complex across the street from petitioner's home. Petitioner, Eric Krystkowiak, a member of and spokesperson for a neighborhood association, continued to contest the development after the neighborhood association allegedly agreed to discontinue its opposition. Brisben sued Krystkowiak for tortious interference with contract and he defended on First Amendment grounds.

Applying *POME*, the trial court dismissed Brisben's claim, but refused to award Krystkowiak attorney fees. Although on appeal it reached the same result and affirmed the trial court's order of dismissal, the court of appeals held that *POME's* First Amendment analysis was inapplicable to the case because Krystkowiak waived his constitutional rights. It concluded that the case presented a purely contractual dispute, Brisben's claims could be dismissed under Colorado Rule of Civil Procedure ("C.R.C.P.") 12(b)(5), and that statutory attorney fees were therefore available to Krystkowiak under section 13–17–201, 5 C.R.S. (2003).[1] *W.O. Brisben Cos. v. Krystkowiak*, 66 P.3d 133 (Colo.App.2002).

1. Because the statutes relevant to this dispute have not changed since this case arose, we refer

Based on the Nonprofit Corporation Act ("NCA") and cases interpreting the governance of such entities, we hold that Krystkowiak did not waive his First Amendment right to petition in an individual capacity by virtue of his membership in a neighborhood association, even though the association entered into a settlement agreement with Brisben. *See* § 7–121–101 to –137–301, 2 C.R.S. (2003). The Northeast Colorado Springs Neighborhood Association's ("NECSNA") articles of incorporation and bylaws do not deviate from the default governance structure articulated by the NCA. Under this structure, a member like Krystkowiak is not individually bound by a contract entered into by the association. Therefore, we reject the court of appeals' conclusion that Krystkowiak contracted away his First Amendment rights and that this case presents only a question of agency law.

We reaffirm *POME's* holding that a motion to dismiss based on First Amendment immunity is properly decided as a motion for summary judgment. Because the relevant statute, section 13–17–201, precludes the recovery of attorney fees whenever a motion is converted to summary judgment, it follows that a defendant who prevails on a motion to dismiss based on First Amendment immunity generally may not recover attorney fees. In this case, however, because there is an alternative, independent ground upon which Brisben's claim may be dismissed that comes within section 13–17–201, we hold Krystkowiak can recover his attorney fees. Although we reject the court of appeals' analysis of *POME*, we agree that the tort claim was properly dismissed under C.R.C.P. 12(b)(5) for failure to state a claim and that attorney fees are therefore available to Krystkowiak under the terms of section 13–17–201. We hold Krystkowiak's inability to recover attorney fees under *POME* does not prevent him from recovering those fees under an alternative theory because both result in dismissal of Brisben's tort claim against him.

Therefore, we affirm the court of appeals' judgment on different grounds, and remand this case for its return to the trial court with directions to grant the petitioner appropriate attorney fees.

## II. Facts and Procedural History

In 1998, Brisben submitted a plan to develop an apartment complex on a vacant tract of land in Colorado Springs. The proposal for the complex was originally designed to include eight buildings with a total of 160 apartment units on approximately eight acres of land. This land was situated across the street from Krystkowiak's home. Krystkowiak opposed the development, and together with his neighbors, formed the Northeast Colorado Springs Neighborhood Association, in order to contest the project. Krystkowiak was not an officer or director of NECSNA, but served as the association's design committee chair and spokesperson. He assumed this role as an unpaid volunteer of the organization.

In meetings before the city council and planning commission, NECSNA took the position that Brisben's project violated the city's zoning and planning ordinances because the bulk, density, and scale of the plan were excessive; the landscaping did not meet city or area requirements; and there was not adequate open space.[2] After one of the hearings, the city planning commission proposed mediation between NECSNA and Brisben. The mediation resulted in a settlement agreement, which NECSNA's president signed. A separate signature line was provided for Krystkowiak, but he refused to sign the agreement.

Under the terms of the agreement, NECSNA promised to cease its opposition to the project in exchange for Brisben's promise to make certain modifications to the development. Krystkowiak asserts the contract was not binding on him because he did not sign it, while Brisben contends that the signature of NECSNA's president was sufficient to bind the organization and its members. The validity of the contract remains in dispute.

to their current codification in this opinion.

**2.** The Brisben project was considered before the planning commission in hearings on three separate occasions. The city council additionally held two hearings on the proposed development.

In subsequent hearings before the city council and planning commission, Krystkowiak continued to oppose Brisben's proposed development. Krystkowiak asserts that he was petitioning the government during these hearings in his individual capacity as a private citizen whose primary purpose was to protect his family and the value of the family property. In response, Brisben argues that Krystkowiak made these appearances only in his capacity as NECSNA's agent and that he was not voicing his personal concerns.

Ultimately, the city council denied Brisben's proposal for the apartment complex, finding it was not in compliance with the city code. Brisben subsequently filed suit against NECSNA and Krystkowiak. In its first claim, Brisben alleged NECSNA breached its contract with Brisben to support its development proposal. In its second claim, Brisben alleged that Krystkowiak intentionally interfered with the NECSNA contract when he continued to oppose the development. Brisben sought over sixteen million dollars in damages from both parties.[3]

Krystkowiak filed a C.R.C.P. 12(b)(1) motion to dismiss Brisben's complaint for lack of subject matter jurisdiction. Krystkowiak claimed immunity from liability, both as a private citizen exercising his rights under the First Amendment of the United States Constitution, and as an unpaid volunteer under the Volunteer Service Act. § 13-21-115.5, 5 C.R.S. (2003).

The trial court converted Krystkowiak's motion to dismiss into a motion for summary judgment, relying upon the procedural and substantive dictates of this court's decision in POME. Under POME, a defendant's motion to dismiss predicated on the First Amendment right to petition must be treated as a motion for summary judgment. 677 P.2d at 1369. To defeat the motion to dismiss, the plaintiff is required to demonstrate its claim is viable under the First Amendment by satisfying a three-part test. Id. The court found that Brisben failed to meet this standard, and that the complaint was filed in retaliation for Krystkowiak's exercise of his First Amendment right to petition. Accordingly, the court dismissed the claim against Krystkowiak. However, the trial court denied Krystkowiak's request for attorney fees because, under section 13-17-201, a defendant who prevails on a motion to dismiss treated as a motion for summary judgment is ineligible for attorney fees.

Krystkowiak appealed the trial court's denial of attorney fees, and Brisben cross-appealed the dismissal of its claim. The court of appeals affirmed in part, reversed in part, and remanded the case for further proceedings. See Krystkowiak, 66 P.3d at 135. The court held POME did not apply to Brisben's intentional interference claim against Krystkowiak because the claim stemmed solely from a contractual dispute. Id. Nevertheless, the court ultimately affirmed the dismissal of Brisben's claim, based on agency principles. See id. at 137.

Although it did not state so expressly, the court of appeals apparently determined that Krystkowiak waived his First Amendment rights because he was a member of NECSNA and the association settled with Brisben. See id. at 135. The court considered Krystkowiak to be NECSNA's agent and held Brisben failed to state a claim because it did not allege that Krystkowiak acted outside the scope of his agency with NECSNA, or that he was motivated solely by the desire to harm the contracting parties or to interfere with their contract. See id. at 137. Because Krystkowiak's motion to dismiss succeeded without a POME inquiry and did not have to be treated as a motion for summary judgment, the court held that the trial court erred by denying Krystkowiak's request for attorney fees under section 13-17-201. Id. at 138. The court remanded the case to the trial court to determine the amount of attorney fees that would be reasonable under the circumstances. Id. at 138.

Krystkowiak petitioned this court for review, arguing that the court of appeals erred in determining the trial court improperly applied the POME analysis to this case, and that he is entitled to attorney fees under

---

3. Brisben also filed suit against the City of Colorado Springs for review of its decision rejecting the proposed development under C.R.C.P. 106. Both the district court and court of appeals ruled in favor of the city. Only the claim against Krystkowiak is before us.

section 13–17–201. We accepted certiorari on both issues.[4]

## III. First Amendment Right to Petition

In this case, Brisben contends that Krystkowiak, as a member of and spokesperson for NECSNA, contracted away his right to continue protesting the development when NECSNA's president signed the proposed settlement agreement. Brisben maintains Krystkowiak tortiously interfered with its contract with NECSNA because he knew about the contract, and intentionally induced NECSNA not to perform it by continuing to protest.[5] Krystkowiak counters that he neither breached nor tortiously interfered with any contract. According to Krystkowiak, he was contesting the development in his individual capacity, and was in no way bound by the agreement because he refused to sign it.

We reject the court of appeals' conclusion that a person gives up his or her First Amendment rights by joining a nonprofit corporation, and that Krystkowiak gave up his rights under the facts of this case. We also reject the notion that this case presents a purely contractual dispute. If Krystkowiak had not exercised his First Amendment right to petition the city to reject Brisben's development plan, this case never would have arisen.

We are concerned here with the intersection of the First Amendment and contract law. Therefore, we examine when the First Amendment right to petition may be raised as a defense, and how this defense may be limited by contract. We then decide whether the First Amendment protects a person accused of tortiously interfering with a contract as a consequence of his petitioning activity.

In reaching the conclusion that such a person benefits from the protections of the First Amendment, we look to the statutes governing NECSNA, a neighborhood association organized under the Colorado Nonprofit Corporation Act. Our holding is additionally supported by two basic tenets of First Amendment law—that an individual's rights apply separately from the rights held by groups, and that a person has the First Amendment right not only to associate with other persons, but to disassociate from them as well.

### A. The First Amendment Defense and Its Contractual Limitations

■ The First Amendment recognizes "the right of the people ... to petition the government for a redress of grievances." U.S. Const. amend. I. The Fourteenth Amendment extends this guarantee to the states, and accordingly, state law tort standards must satisfy the First Amendment. See N.Y. Times v. Sullivan, 376 U.S. 254, 269, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The right to petition has been characterized as one of the most precious liberties protected by the Bill of Rights. United Mine Workers of Am. v. Ill. State Bar Assoc., 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967). In conjunction with the right of assembly, the right to petition is the enabling clause of the First Amendment. It safeguards citizens' exercise of their other First Amendment rights, that is, their rights to free speech, press, and religion. Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945).

■ POME is Colorado's seminal case defining the First Amendment right to petition. It underscores the importance of the right to

---

4. We accepted certiorari on the following issues:

   1) Whether the court of appeals erred in holding that the First Amendment right to petition does not protect an individual who, as a result of petitioning his government in both a representative and personal capacity, is sued for intentional interference with contract;
   2) Whether attorney fees under section 13–17–201, 5 C.R.S. (2002), are available pursuant to the First Amendment analysis articulated in Protect Our Mountain Environment, Inc. v. District Court, 677 P.2d 1361 (Colo.1984).

5. On certiorari, Brisben's argument shifted. The developer claimed that it did not sue Krystkowiak for his petitioning activity, but because he failed to fulfill contractual obligations which precluded this activity. During oral argument, Brisben argued Krystkowiak had verbally agreed to the terms of the settlement agreement, and had promised to sign it. Because this issue was raised for the first time on appeal, we decline to consider it here. Estate of Stevenson v. Hollywood Bar & Cafe, Inc., 832 P.2d 718, 721 n. 5 (Colo.1992) (issues may not be raised for the first time on appeal where the trial court has not had the opportunity to rule on them).

petition in a representative democracy: "Citizen access to the institutions of government constitutes one of the foundations upon which our republican form of government is premised." 677 P.2d at 1364. *POME* involved an environmental group and two individuals who succeeded in overturning the Board of County Commissioners' approval of rezoning 507 acres of land in Evergreen for commercial and residential development. *Id.* at 1362–64. The developer responded by filing suit against the petitioners for abuse of process, causing economic harm, and civil conspiracy. *Id.* at 1364. We articulated a three-part test, requiring the developer to prove the environmental activists' exercise of their First Amendment right to petition was a mere pretext for the instigation of baseless litigation against the developer. *Id.* at 1369. To that end, to be able to go forward with a case, a plaintiff must be able to show:

> (1) the defendant's administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion; and
>
> (2) the primary purpose of the defendant's petitioning activity was to harass the plaintiff or to effectuate some other improper objective; and
>
> (3) the defendant's petitioning activity had the capacity to adversely affect a legal interest of the plaintiff.

*Id.* at 1369. If the plaintiff cannot meet this burden, the court assumes the action violates the defendant's First Amendment right to petition, and the case is dismissed.

■ Although *POME* vigorously protects the right to petition, its analysis makes clear that the right is not absolute. The First Amendment will not protect petitioning activity that is a sham, undertaken to harass an opponent rather than obtain relief from the government. *Id.* at 1366–67. To be protected, petitioning activity must legitimately be aimed at obtaining favorable government action. *Id.* at 1368. Those who exploit the inevitable delays, costs and inconveniences of the government process to punish their adversaries may not avail themselves of the First Amendment. *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

■ It is also well recognized that the First Amendment will not protect people who have contracted away their First Amendment rights. The United States Supreme Court, other courts, and this court have concluded that First Amendment rights are not absolute, and may be limited by contract. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 670–71, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991); *Pierce v. St. Vrain Valley Sch. Dist.*, 981 P.2d 600, 604 (Colo.1999); *see also, Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 691 N.E.2d 935, 942 (1998); *State St. Corp. v. Barr*, 11 Mass. L. Rptr. 191, 2000 WL 198950 (Mass.Super.2000).

In *Cohen*, for example, the petitioner revealed confidential information regarding a political race to newspapers after receiving a promise of confidentiality from their reporters. 501 U.S. at 665, 111 S.Ct. 2513. When the papers broke this promise and published articles that identified him as a source, the petitioner was fired from his job. *Id.* at 666, 111 S.Ct. 2513. The Supreme Court held the First Amendment did not bar petitioner's promissory estoppel claim against the newspapers. *Id.* at 670, 111 S.Ct. 2513. Given their reporters' actions, the newspapers could not stand behind the protections of the First Amendment. In *Duracraft*, the Massachusetts Supreme Judicial Court decided that when a contract is entered into before petitioning activity takes place, one's First Amendment rights can be contractually limited. 691 N.E.2d at 942; *see also State St.*, 11 Mass. L. Rptr. 191 (applying *Duracraft* rationale).

In *Pierce*, this court considered the intersection of the First Amendment with contract law. 981 P.2d 600. *Pierce* involved a former school superintendent who sued the school district and board of education members for breach of a settlement agreement of an employment dispute. *Id.* at 601–02. The settlement agreement provided that the facts and details of the school board's investigation of the superintendent would remain confiden-

tial. *Id.* This promise was later broken when an unnamed source revealed to a newspaper that allegations of sexual harassment were the basis of the superintendent's resignation. *Id.* We concluded that the First Amendment did not prevent the superintendent from holding the school district to the confidentiality provisions of its settlement agreement with him. *Id.* at 604.

*Pierce* importantly differs and is distinguishable from this case. First, members of a school board are not like members of a neighborhood association. The school board's role and tenure are defined by the Colorado Constitution and by statute. *See* Colo. Const. art. IX, 1; 22–32–109, 7 C.R.S. (2003). Second, members of the school board were expressly made parties to the *Pierce* confidentiality agreement. By contrast, NECSNA was a highly informal, fluid entity of neighbors, and Krystkowiak specifically refused to become party to the contract.

■ In all of the cases discussed above, the parties specifically contracted away their First Amendment right to free speech or First Amendment right to petition. Krystkowiak made no explicit waiver. Therefore, Brisben can prevail only if Krystkowiak, by virtue of his NECSNA membership and the role he played in the organization, implicitly waived his First Amendment right to petition against Brisben's development when NECSNA's president signed the settlement agreement. In order to answer this question, we must look to the law governing NECSNA to decide whether members of a neighborhood association are bound by a contract signed by the association's president. If Krystkowiak was bound, the First Amendment would not exempt him from his contractual obligations. Conversely, if the contract was not binding upon him, Krystkowiak would remain free to exercise his First Amendment right to petition in opposition to the project.

## B. Nonprofit Corporation Act

NECSNA was a neighborhood association organized under the Colorado Nonprofit Corporation Act ("NCA"). The General Assembly first adopted a statutory scheme governing nonprofit corporations in 1963, which it later repealed and replaced with the NCA in 1998. *See* § 7–20–101 to –29–109, 2 C.R.S. (1963) (repealed 1998); § 7–121–101 to –137–301, 2 C.R.S. (2003). The NCA supplants the common law and is relevant to this case because it determines whether an individual member of a nonprofit corporation is individually bound by a contract signed by its president.[6]

As we will show in the following discussion applying the NCA, we conclude that the alleged settlement agreement between Brisben and NECSNA did not bind Krystkowiak. Under the default governance structure of the NCA, Krystkowiak would not be bound by a contract entered into by the neighborhood association. NECSNA's articles of incorporation and bylaws do not change this result. Because Krystkowiak did not contract away his First Amendment rights, we hold that the court of appeals erred in ruling that *POME* and the First Amendment protections it articulates are inapplicable to this case.

The NCA was revised in 1998 to reflect the developments in nonprofit corporation law since the law was first enacted, and incorporates some of the changes that have evolved in for-profit corporation law over this time period. Garth C. Grissom, Allen Sparkman & Peter Zwanzig, *An Overview of the Colo. Revised Nonprofit Corp. Act,* 26 Colo. Law. 5 (Sep.1997). Like a for-profit corporation, a nonprofit corporation has all the powers of a natural person in carrying out its activities, including the power to enter into contracts. *See* § 7–123–102(g), 2 C.R.S. (2003).

A nonprofit corporation is a legal entity separate from its members, and a contract in the corporation's name binds only the corpo-

6. We do not suggest that the NCA is applicable to Brisben's intentional tort claim. We agree that the NCA does not immunize members of a nonprofit corporation from suit for their own intentional torts. The relevant point is that the NCA informs us as to whether Krystkowiak's First Amendment defense may properly be invoked.

As discussed in the text, we conclude that under the NCA, Krystkowiak is not bound by NECSNA's contract; in light of that conclusion, he is free to exercise his First Amendment right to petition and to employ this right as the basis of immunity from suit.

ration. *Id.* Correspondingly, members may not be held liable for the corporation's tortious acts or breaches of contract merely by virtue of their membership or management authority in the corporation. *See* § 7–126–103, 2 C.R.S. (2003) ("The directors, officers, employees, and members of a nonprofit corporation are not, as such, personally liable for the acts, debts, liabilities, or obligations of a nonprofit corporation.") A nonprofit corporation may alter the default structure set forth in the NCA through its articles of incorporation or bylaws, and it may provide different or additional rights and obligations to its members. *See* § 7–122–106, 2 C.R.S. (2003).

■ The NCA represents a clear declaration by the legislature that members of a nonprofit corporation generally are not liable for contracts or torts for which the corporation is liable. There are three exceptions to this rule. First, members of a nonprofit corporation may become personally liable for the debt of the corporation to the extent the alter ego doctrine applies or they owe money to the corporation.[7] *See ECC Constr. v. Ganson,* 82 Cal.App.4th 572, 98 Cal.Rptr.2d 292, 295 (2000). Second, when a person purports to act as or on behalf of a nonprofit corporation without the existence of at least a good faith belief that the person has such authority, the person is jointly and severally liable for all liabilities that result. *See* § 7–122–104, 2 C.R.S. (2003). The final exception to the general rule of limited liability arises if a member of a nonprofit corporation expressly becomes a party to a contract.

The liability of members of a nonprofit corporation for contracts entered into by the corporation is not an issue that has been litigated in Colorado. There are two California cases that have considered this issue, both arising in the context of homeowners' associations. *See Ganson,* 82 Cal.App.4th 572, 98 Cal.Rptr.2d 292; *Gantman v. United*

*Pac. Ins. Co.,* 232 Cal.App.3d 1560, 284 Cal. Rptr. 188 (1991). In *Ganson,* the homeowners' association executed a contract with a construction company to make repairs to a condominium complex. 98 Cal.Rptr.2d at 294. None of the homeowners was a signatory to the contract. *Id.* When a dispute arose over the amount due to the construction company, the company sued the association as well as the homeowners. *Id.* The California Court of Appeal held that because the owners were not parties to the contract, they could not be held liable for the debts and liabilities of the homeowners' association, and the company could only recover damages from the association itself. *Id.* at 295. In *Gantman,* the court held that individual members of a homeowners' association lacked standing to maintain an action against insurers on policies purchased by and issued to the association. 284 Cal.Rptr. at 189. The court recognized the separate identity of the association, and that, by the terms of the association's declaration of covenants, conditions, and restrictions, the right to contract regarding a master insurance policy was exclusive to the association. *Id.* at 193.

Under the default governance structure of the NCA, Krystkowiak is not bound by NECSNA's contract, and fits none of the enumerated exceptions to the general rule of limited liability. Krystkowiak did not treat NECSNA as his alter ego, nor did he owe money to it. He did not enter into a contract purporting to act as or on behalf of NECSNA. Finally, Krystkowiak did not expressly become a party to the alleged settlement agreement between NECSNA and Brisben. He specifically refused to sign the agreement.

NECSNA's articles of incorporation and bylaws do not deviate from the NCA in terms of the rights and duties of its members. The articles of incorporation and bylaws contain no provisions either binding a

7. The alter ego doctrine applies, allowing plaintiffs to pierce the corporate veil and hold shareholders liable for the obligations of the corporation, if the corporate entity is a "mere instrumentality" for the transaction of the shareholders' own affairs, and "there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." *Gude v. City of Lakewood,* 636 P.2d 691, 697 (Colo.1981) (internal quotations omitted). The alter ego doctrine applies to all corporations, including nonprofit corporations. *See Doe v. Gelineau,* 732 A.2d 43 (R.I. 1999) (recognizing that plaintiffs may pierce the corporate veil of a nonprofit corporation).

member by a contract signed by NECS-NA, or stating that NECSNA's members have authorized it to represent their individual interests. Therefore, we conclude the default structure established by the NCA controls, and that the signature of the settlement agreement with Brisben by one member, NECSNA's president, was insufficient to bind its members, including Krystkowiak. Our conclusion is supported by *Ganson* and *Gantman*, both of which recognize that members of a homeowners' association organized as a nonprofit corporation are not individually bound by a contract entered into by the organization.

## C. Individuals' Rights under the First Amendment and the Right to Disassociate

■ We note as well that in the First Amendment context, the U.S. Supreme Court has held that an individual's rights apply separately from the rights held by groups. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918–19, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). In *Claiborne Hardware*, the Supreme Court held that individual members could not be punished for damages resulting from the activities of their group. *Id.; see also United Mine Workers v. Ill. State Bar Assoc.*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967) (holding First Amendment protections apply to groups, as well as individuals).[8] The United States Court of Appeals for the Sixth Circuit held that a school did not waive its First Amendment rights by joining an athletic association. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 262 F.3d 543, 550 (6th Cir.

2001). Our holding, that a member of a neighborhood association does not forfeit his individual rights by virtue of his membership in the organization, is consistent with these precedents.

■ Our holding is additionally supported by the First Amendment right of association, and its corollary right of disassociation. By joining NECSNA, Krystkowiak was exercising his First Amendment right of freedom of association.[9] However, Krystkowiak had the right to disassociate from NECSNA once it no longer represented his individual viewpoint. In *Boy Scouts of America v. Dale*, the Supreme Court held that the Boy Scouts could exclude homosexual troop leaders because their forced inclusion would interfere with the organization's expressive association. 530 U.S. 640, 656, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000). Forced inclusion of a member is no more acceptable when an association's expressive activity becomes inconsistent or incompatible with the member's viewpoint as an individual. If this occurs, the person is free to drop his or her membership and disassociate from the organization.

We will not construe Krystkowiak's First Amendment right of association to limit his First Amendment right to petition. If NECSNA did in fact contractually bind itself to discontinue its opposition to Brisben's development, such a position was incompatible with Krystkowiak's viewpoint. Once NECSNA's and Krystkowiak's viewpoints diverged, he was free to disassociate from the organization and continue to petition against the development in his individual capacity.[10]

---

**8.** In the criminal context, the U.S. Supreme Court has held that persons who join an association, but neither subscribe to, nor participate in, its illegal activities, cannot be presumed guilty because of the company they keep. *Keyishian v. Bd. of Regents of Univ. of State of New York*, 385 U.S. 589, 605–10, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Am.-Arab Anti–Discrimination Comm. v. Reno*, 70 F.3d 1045, 1063 (9th Cir.1995). The unlawful aims or activities of a national organization may not be arbitrarily attributed to a local chapter of the organization. *Healy v. James*, 408 U.S. 169, 186–87, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972).

**9.** Freedom of association comes in two types, protecting citizens' freedom of both intimate and

expressive association. *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Expressive association protects people's right to associate for the purpose of engaging in activities protected by the First Amendment, including petitioning the government for the redress of grievances. *See Sanitation and Recycling Indus. v. City of New York*, 107 F.3d 985, 997 (2d Cir.1997).

**10.** The fact that NECSNA attempted to rescind the settlement agreement with Brisben at the time Krystkowiak was continuing to petition in his individual capacity does not change this analysis. Krystkowiak's refusal to sign the settlement agreement is the relevant point of disassociation; when he continued to petition against Brisben's

The fact that Krystkowiak was initially acting in a representative capacity does not subsume his individual rights.

For all these reasons, we conclude that Krystkowiak's continued opposition to Brisben's development was not prohibited by contract, and that he was free to invoke the First Amendment to defend against Brisben's suit. Consequently, we proceed to analyze whether the trial court properly decided Krystkowiak's case under *POME*.

## IV.  Krystkowiak's Entitlement to Attorney Fees

The second issue before this court is whether the trial court correctly applied *POME* when it dismissed Brisben's claim, but refused to award Krystkowiak attorney fees and costs. Brisben argues that the plain directive of *POME* is to treat any motion to dismiss predicated on the First Amendment right to petition as a formal C.R.C.P. 56 summary judgment ruling, and that such motions are automatically precluded from receiving attorney fees pursuant to section 13–17–201. Krystkowiak counters that his First Amendment defense should be treated as a motion to dismiss under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction, and that he is therefore entitled to attorney fees under section 13–17–201.

■ As a general rule, in the absence of a statute, private contract, or procedural rule providing otherwise, the prevailing party in a tort action cannot recover attorney fees. *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo.1996). This results from the American rule, which requires each party in a lawsuit to bear its own legal expenses. *Id.* Several principles underlie this rule: responsibility for one's own legal expenses is thought to encourage the settlement of cases; the risk of having to pay an opponent's legal fees would discourage litigants of limited means from instituting actions to vindicate their rights; and the difficulty of ascertaining reasonable attorney fees in every case would impose a substantial burden on judicial administration. *Id.*

Colorado has several recognized exceptions to the general rule, including section 13–17–201, which requires attorney fees to be awarded whenever an entire tort action is dismissed prior to trial under C.R.C.P. 12(b), unless the motion is treated as one for summary judgment. The statute states in full:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action. This section shall not apply if a motion under rule 12(b) of the Colorado rules of civil procedure is treated as a motion for summary judgment and disposed of as provided in rule 56 of the Colorado rules of civil procedure.

§ 13–17–201.

This statute refers to the rules of civil procedure to identify the cases in which a trial court must award attorney fees. We take these references as broad descriptors rather than technical pleading requirements. We do so because rules of procedure are within the province of the court and may change over time. *See* Colo. Const. art. VI, § 21. Therefore, to give lasting meaning to this statute, we must look beyond the labels to the legislative intent. Our review of the legislative history indicates that the legislature intended to award attorney fees in a narrow category of baseless tort cases, namely those cases that were so lacking in substance that they could not survive a motion to dismiss for failure to state a claim upon which relief could be granted. *See* Hearings on H.B. 1304 Before the House Jud. Comm., 56th Gen. Assembly, 1st Reg. Sess. (Mar. 3, 1987) (statement of Rep. Dambman); *see also State v. Golden's Concrete Co.*, 962 P.2d 919, 925 (Colo.1998) (holding the intent of the General Assembly in section 13–17–201 was to discourage unnecessary litigation of tort claims).

The legislature considered it improper to award attorney fees in a case that was decided on summary judgment, because of the

development, he was doing so in his individual capacity.

inequality that would result in allowing only a prevailing defendant to collect attorney fees. *See* Hearings on H.B. 1304 Before the House Jud. Comm., 56th Gen. Assembly, 1st Reg. Sess. (Mar. 3, 1987) (statement of Rep. Kopel). Once a case goes to summary judgment, the claims it contains are accorded careful consideration, and involve the review of evidence outside the pleadings. These cases do not involve the insubstantial tort claims the legislature intended to address, and therefore provide an additional reason why an award of attorney fees in a tort case decided on summary judgment is not appropriate.

■ The question before this court is whether Brisben's case against Krystkowiak falls under section 13–17–201, a statutorily established exception to the general rule precluding the award of attorney fees to the prevailing party. The trial court held that Krystkowiak could not recover attorney fees because *POME* requires a motion to dismiss based on First Amendment immunity to be converted into a motion for summary judgment, and decisions based on such motions are specifically ineligible for attorney fees under section 13–17–201. We agree generally with the summary judgment procedure described in *POME*. However, in this case, because there is a valid alternative basis to dismiss the claim, we hold that Krystkowiak is entitled to attorney fees under the statute. When, as here, a defendant has two valid defenses to a tort claim, and one meets the statutory requirements for attorney fees, such fees should be awarded.

As *POME* indicates, summary judgment is often the appropriate procedure for determining the merits of a First Amendment defense because it allows courts to consider matters outside the pleadings, while at the same time, eliminate sham claims and defenses in an expedited manner. 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2711 (3d ed.1998) (hereinafter "Wright & Miller"). When the First Amendment right to petition is asserted as a defense, very important rights are asserted on both sides.

The defendant asserts one of our most basic constitutional rights, and the plaintiff asserts its own important constitutional right to have its dispute with the defendant resolved in a court of law.

The test for summary judgment is highly stringent; the non-moving party is afforded every benefit of the inferences and all its allegations are taken as true. *See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 925 (Colo.1993). If there are no disputed issues of material fact, and the movant is entitled to prevail as a matter of law, the court will grant the party's motion for summary judgment. 10A Wright & Miller § 2711. *POME's* stated purpose in treating a motion to dismiss as a motion for summary judgment was to allow parties "a reasonable opportunity to present all material pertinent to the motion...." *POME*, 677 P.2d at 1369. Under summary judgment, this is possible because the parties may present materials outside the pleadings, including affidavits and other records. 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2712 (3d ed.1998).

In Krystkowiak's case, the facts were undisputed and the trial court ultimately decided that Krystkowiak was entitled to judgment as a matter of law. However, the parties presented substantial materials beyond the pleadings, and the trial court relied upon them in making its decision. Krystkowiak attached nearly 200 pages of documents supporting his motion to dismiss, including excerpted transcripts of meetings before the city planning commission and city council, several affidavits, and the articles of incorporation and bylaws of NECSNA. In response to Krystkowiak's motion to dismiss, Brisben attached an excerpted transcript of a city council meeting, and an affidavit by NECSNA's president.

We have considered and rejected Krystkowiak's assertion that this case could or should have been decided as a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.[11] When a defendant op-

---

11. For purposes of this opinion we assume without deciding that a case dismissed under C.R.C.P. 12(b)(1) qualifies for an award of attorney fees under section 13–17–201.

poses a claim on the basis that the court lacks subject matter jurisdiction, the objection is that the court has no authority or competence to hear or decide the case. 5A Wright & Miller § 1350 (2d ed.1990). Krystkowiak's First Amendment defense cannot fairly be characterized as asserting lack of subject matter jurisdiction. In reaching its determination in this case, the trial court was not merely considering its authority or ability to hear and decide the case. This is the extent of the inquiry permissible in the context of subject matter jurisdiction. *Id.* A defendant's claim that he has immunity under the First Amendment invokes the court's authority to adjudicate the case; the court is considering whether the defendant is immune from an improperly instigated suit, not whether it has the authority to decide the case. Accordingly, we conclude that C.R.C.P. 12(b)(1) is not the proper vehicle to decide matters of First Amendment immunity. Summary judgment is the appropriate procedure to employ in this context.

The procedure of *POME*, to convert a motion to dismiss into a motion for summary judgment, and section 13–17–201 intersect in such a way that in the usual case, a defendant who successfully defends on First Amendment grounds is not eligible to recover attorney fees.[12]

■ This, however, is not the usual *POME* case. Here, Krystkowiak may recover his attorney fees because his motion to dismiss Brisben's claim succeeds not only on the basis of his First Amendment defense, but also on the independent, alternative basis under C.R.C.P. 12(b)(5) that Brisben failed to state a tort claim upon which relief could be granted.

■ Brisben's claim for intentional interference with contract against Krystkowiak has no basis in law. The NCA clearly forecloses the claim and, as the court of appeals demonstrates, it cannot survive under the law of agency. To be liable for intentional interference with contract, a defendant must 1) be aware of a contract between two parties, 2) intend that one of the parties breach the contract, 3) and induce the party to breach or make it impossible for the party to perform the contract. *See Trimble v. City & County of Denver*, 697 P.2d 716, 726 (Colo. 1985); *see also*, Restatement (Second) of Torts § 766 comment h. In addition, the defendant must have acted "improperly" in causing the result.[13] *Id.*

In its complaint, Brisben alleged that "NECSNA's breach of its agreement to support Brisben's development plan at the public hearings ... was primarily the result of the actions of Defendant Krystkowiak" and that "Krystkowiak presented the NECSNA's objections to Brisben's plan and encouraged the Planning Commission, and the City Council, to deny Brisben's development plan." Brisben failed to allege any facts that Krystkowiak was bound by NECSNA's agreement, or that the agreement curtailed Krystkowiak's First Amendment right to petition. Indeed, Brisben knew Krystkowiak expressly refused to sign the settlement agreement, and should have known that NECSNA, as a nonprofit corporation, was subject to the NCA.

Under the NCA, NECSNA could not individually bind its members, including Krystkowiak, to a contract its president signed. At all times, individual members of NECSNA, such as Krystkowiak, were free to disas-

12. We recognize that many states have enacted statutes allowing for early review of motions predicated on the First Amendment right to petition, and award attorney fees upon dismissal. *See* Cal.Civ.Proc.Code § 425.16(b)(1) (West 2003); Del.Code Ann. tit. 10, § 8137 (2003); Ga. Code Ann. § 9–11–11.1 (2003); Me.Rev.Stat. Ann. tit. 14, § 556 (West 2003); Mass. Gen. Laws Ann. ch. 231, § 59H (West 2003); Minn.Stat. Ann. § 554.02 (West 2003); N.Y. C.P.L.R. 3211(g) (McKinney 2003); R.I. Gen. Laws Ann. § 9–33–2 to –3 (2003). Colorado, however, has not enacted such a provision.

13. *Trimble* enunciates the factors a court must consider in determining whether a defendant has acted improperly:
(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relation between the parties.
697 P.2d at 726.

sociate from NECSNA and to express their own views about the proposed development. Brisben's complaint fails to allege Krystkowiak's First Amendment rights were limited by the settlement agreement. The complaint essentially points to the fact that Krystkowiak exercised his First Amendment rights without alleging that the exercise of such constitutional rights was improper. Furthermore, there is no allegation that Krystkowiak's exercise of his right to petition persuaded, intimidated, or intentionally made it impossible for NECSNA to perform its contract. Because it does not allege Krystkowiak's conduct was improper as contemplated by *Trimble*, Brisben fails to state a claim for the intentional interference with contractual relations against Krystkowiak.

Brisben's failure to state a claim under the NCA is dispositive in this case. Therefore, it is not necessary to reach the agency theory upon which the court of appeals relied in dismissing the claim. However, we note the court of appeals presents a decisive alternative analysis that demonstrates Brisben's failure to state a claim. *See Krystkowiak*, 66 P.3d at 137.

The fact that Brisben violated Krystkowiak's First Amendment rights by bringing a baseless tort claim against him does not preclude him from recovering his statutory attorney fees. To hold otherwise would reward Brisben for causing greater harm to Krystkowiak by violating his First Amendment rights as well as his statutory right to be free from a baseless tort suit.

## V. Conclusion

We hold that Krystkowiak was not bound by NECSNA's alleged contract with Brisben, and that Krystkowiak was immune under the First Amendment for his petitioning activity. We agree with the procedure described in *POME* that a motion to dismiss predicated on First Amendment immunity generally must be decided as a motion for summary judgment. By its terms, section 13–17–201 does not apply to *POME* cases because the statute precludes an award of attorney fees

in a tort case whenever a C.R.C.P. 12(b) motion to dismiss is converted to a motion for summary judgment. However, in this case, attorney fees are appropriate because there exists an independent, alternative ground for dismissing Brisben's tort claim that allows for a recovery of attorney fees under section 13–17–201. Therefore, we affirm the court of appeals' dismissal, on different grounds, and remand the case with directions to return it to the trial court to determine the appropriate attorney fees to award Krystkowiak under section 13–17–201.

Justice KOURLIS concurs in judgment only, and Justice COATS joins in the concurrence.

Justice KOURLIS concurring in judgment only:

## I. Introduction

In my view, this case should have been dismissed under C.R.C.P. 12(b)(5) ("Rule 12(b)(5)") based on W.O. Brisben Development Companies, Inc.'s ("Brisben's") failure to state a claim against Eric Krystkowiak for intentional interference with contractual relations. Whether Brisben sued Krystkowiak in his individual capacity or in his representative capacity as an agent of the Northeast Colorado Springs Neighborhood Association (NECSNA),[1] Brisben wholly failed to allege a cause of action against Krystkowiak for interference with contractual relations. Because this case should have been dismissed on Rule 12(b)(5) grounds, I also agree that Krystkowiak was entitled to attorney fees under section 13–17–201, 5 C.R.S. (2003).

If the case moved to summary judgment, as indeed occurred, judgment should also have entered in favor of Krystkowiak as a matter of law because Brisben failed to develop any facts that Krystkowiak, in allegedly causing a breach of contract between NECSNA and Brisben, acted in his personal capacity (thereby defeating any personal claim against Krystkowiak) or that Krystkowiak acted with the requisite animus (thereby defeating the claim against him as

---

1. Brisben's intent in this regard has caused great confusion in this case, continuing to and through the oral arguments.

NECSNA's agent). Because this case should have been dismissed either on the pleadings or on the merits, I would not reach the applicability of our decision in *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361 (Colo.1984) ("*POME*").

Were I to reach Krystkowiak's asserted *POME* defense, I would hold that it is not applicable. The majority concludes that because Krystkowiak was acting in his individual capacity in petitioning the City of Colorado Springs, that petitioning activity was automatically immune from suit under *POME*. However, because Brisben adduced no facts to demonstrate that Krystkowiak ever acted in his individual capacity, I conclude that Krystkowiak was not entitled to the benefit of a *POME* defense. Rather, because NECSNA, Krystkowiak's principal, had contractually waived its right to petition the government in exchange for concessions from Brisben, Krystkowiak was bound by that waiver while acting in his official capacity as NECSNA's agent.

I also conclude that section 7–126–103, 2 C.R.S. (2003), of the Colorado Revised Nonprofit Corporation Act (NCA) does not apply here because it would immunize Krystkowiak from suit only for those debts, liabilities, and obligations that belong to NECSNA. Because Krystkowiak was called to answer for his own intentional conduct, for which NECSNA could not have been liable, that statute has no relevance under these circumstances.

Because I would affirm the court of appeals' ruling on grounds different from the majority's, I join only in the court's judgment and write separately.

## II.  C.R.C.P. 12(b)(5)

Krystkowiak filed a motion to dismiss under *POME*, which is, for all practical purposes, a motion to dismiss for failure to state a claim under Rule 12(b)(5). *POME*, 677 P.2d at 1368. Only if Brisben asserted a colorable claim does a court need to analyze the defendant's defenses—let alone constitutional defenses.[2] Here, Brisben failed to assert such a colorable claim—either against Krystkowiak in his individual capacity or in his official capacity as NECSNA's agent.

In *Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985), we stated that

> one who *intentionally* and *improperly* interferes with the performance of a contract (except one to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

697 P.2d at 726 (quoting Restatement (Second) of Torts § 766 (1979)). Key to the tort is that the defendant was aware of the contract between the third person and another, and intended for the third person to breach the contract with the other either by inducing the third person to breach through persuasion or intimidation, or by intentionally making it impossible for the third person to perform. Restatement (Second) of Torts § 766 comment h.

Additionally, the defendant must have acted "improperly" in causing the result. To determine whether the defendant acted improperly, a court is to consider:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relation between the parties.

*Trimble*, 697 P.2d at 726 (quoting Restatement (Second) of Torts § 767).

Because corporate officers as well as agents are generally not liable for the intentional interference with contractual relations involving the corporation or the principal, plaintiffs suing an agent or corporate officer must additionally allege that the defendant

---

**2.** *See Ricci v. Davis*, 627 P.2d 1111, 1121 (Colo. 1981) ("It is well settled that a court will not rule on a constitutional question which is not essential to the resolution of the controversy before it.").

acted with malice in inducing or causing the breach. *Id.; Powell Prods., Inc. v. Marks,* 948 F.Supp. 1469, 1477–78 (D.Colo.1996). Without this additional pleading burden, "every time a corporation was sued for breach of contract, each of its officers who participated in the decision to breach would also be liable for intentional interference with contractual relations." *Marks,* 948 F.Supp. at 1478. As the court of appeals aptly noted in this case, a general recognition of such claims against agents would also create double recovery for a plaintiff where an action already lies in contract against the principal. *See Taylor v. Colo. State Bank of Denver,* 165 Colo. 576, 580, 440 P.2d 772, 774 (Colo.1968) ("The fundamental rule to be observed in breach of contract actions is that the wronged party shall recover compensatory damages sufficient to place him in the position he would have occupied had the breach not occurred.").

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, we may consider only the matters listed in the complaint, and must accept as true all allegations of material fact, viewing them in the light most favorable to the plaintiff. *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 665 (Colo.1999). Because Brisben's complaint did not clarify whether Krystkowiak was acting in his individual or official capacity in inducing the breach in this case, I would analyze the complaint as if it charged both.

As it pertained to Krystkowiak, Brisben's complaint alleged only that "NECSNA's breach of its agreement to support Brisben's development plan at the public hearings ... was primarily the result of the actions of Defendant Krystkowiak" and that "Krystkowiak presented the NECSNA's objections to Brisben's plan and encouraged the Planning Commission, and the City Council, to deny Brisben's development plan." Brisben failed to allege any facts tending to demonstrate that Krystkowiak induced or caused NECSNA to breach its contract with Brisben. There was no indication that Krystkowiak either persuaded or intimidated NECSNA into repudiating the settlement and there was no suggestion that Krystkowiak made it impossible for NECSNA to hon-

or the settlement. Further, all of Krystkowiak's petitioning activity took place after NECSNA's president attempted to rescind the agreement and the complaint itself characterizes virtually all of the petitioning activity as NECSNA's own conduct—not Krystkowiak's. Thus, Brisben failed to allege that Krystkowiak induced or caused the breach.

Moreover, the complaint alleges no facts that would support a conclusion that Krystkowiak's conduct in relation to the breach was improper—only that the breach was the result of his conduct. Without an allegation that Krystkowiak induced the breach through persuasion or intimidation, or that he intentionally made it impossible for NECSNA to perform its contract and without an allegation that any such conduct was improper as contemplated by *Trimble,* Brisben failed to state a claim for intentional interference with contractual relations against Krystkowiak in his individual capacity.

If the claim pertained to Krystkowiak as an agent of NECSNA and as a corporate officer, then in addition to alleging that Krystkowiak improperly induced or caused NECSNA's breach, our case law would demand that Brisben also allege that Krystkowiak acted with malice in inducing or causing the breach. Because the complaint failed to so allege, Brisben similarly failed to allege a claim against Krystkowiak for intentional interference with contractual relations in his capacity as NECSNA's agent.

For these reasons, it is clear that Brisben failed to state a claim upon which relief could be granted. Accordingly, the court of appeals was correct to affirm the trial court's dismissal of Brisben's claim against Krystkowiak on that basis.

### III. Summary Judgment

This case was ultimately decided on a summary judgment motion, and the court took into account additional factual information in granting summary judgment. In my view, that information demonstrates, as a matter of law, that Krystkowiak was acting in his official capacity as NECSNA's agent at all relevant times, and that he did not evidence the animus that would be required to hold him

liable for interfering with his principal's contract.

## A. Standard of Review

This court must review the trial court's entry of summary judgment de novo. *McIntyre v. Bd. of County Comm'rs*, 86 P.3d 402, 406 (Colo.2004). Summary judgment should only be entered "when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* In reviewing a summary judgment, "the nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." *Busse v. City of Golden*, 73 P.3d 660, 665 n. 10 (Colo.2003).

## B. Factual Background

The following facts derive from evidence developed by the parties in support of or in opposition to the summary judgment motion.

In June of 1998, Krystkowiak, the defendant in this action and petitioner for purposes of this appeal, received a letter informing him that Brisben planned to develop a large apartment complex in his neighborhood. The planned development was to be built directly across the street from Krystkowiak's house. On June 11, 1998, Brisben filed its application for the project with the City of Colorado Springs Planning Department (CPD). As originally filed, the application proposed a development consisting of 161 apartment units.

Concerned about the project's compatibility with the neighborhood, Krystkowiak notified the CPD of his initial opposition to the plan and began investigating other projects Brisben had completed. He also began research on city design requirements. Between June of 1998 and August of 1998, Krystkowiak was in frequent contact with the CPD.

During the summer of 1998, Krystkowiak and other neighbors who were concerned about the project collaborated to form the Northeast Colorado Springs Neighborhood Association (NECSNA or the "association").

They formed the association for the express purpose of opposing Brisben's development. The association's original officers were Ralph Bowden and Bob Hamm.

In July of 1998, Krystkowiak was selected by the association to be the Chair of the association's Design Committee since he was the member most knowledgeable about city design requirements. Krystkowiak began communicating regularly with the CPD and Brisben using letterhead identifying him with NECSNA.

In August of 1998, the CPD denied Brisben's initial application and set the matter for a hearing before the City Planning Commission (CPC). The CPC considers second-level appeals of the CPD's decisions regarding development applications; the CPD is a recommending body and the CPC is the quasi-judicial decision making body, whose decisions are subject to review by the Colorado Springs City Council (the "city council").

Several meetings took place between NECSNA and Brisben in anticipation of the hearing. Some of the meetings were facilitated by Quinn Peitz, head of the CPD. The association made it known to the CPD and Brisben that they opposed the project as planned due to its scale. To reconcile the goals of Brisben and the association, Peitz hoped to persuade Brisben to scale down its project. After a breakdown in communications between the association and Brisben, the CPD became heavily involved in discussions and eventually proposed mediation.

A pre-mediation meeting took place on November 19, 1998. Those in attendance at the meeting included the proposed mediator, the city attorney, representatives of the CPD, as well as Brisben's attorney and representatives for NECSNA. At that meeting, the parties agreed upon the ground rules for the mediation. In her deposition, Wynetta Massey, the city attorney, testified that the purpose of the scheduled mediation was to arrive at a settlement between the association and Brisben. She explained that if a settlement was forthcoming, NECSNA would not protest the planned development. If a settlement was not forthcoming, however, Brisben was not required to concede any of its plans and NECSNA was free to continue its oppo-

sition—formal or otherwise—to the development.

At the pre-mediation meeting, Ralph Braden, Brisben's attorney, emphatically stated that Brisben would not agree to mediate unless Krystkowiak personally agreed to sign any resulting agreement. Brisben also insisted that all of NECSNA's decision-makers attend the mediation. Mediation was then set for December 7, 1998. Between November 19, 1998, and December 7, 1998, Krystkowiak "was always involved and ... was the leader of [NECSNA] for design purposes."[3]

At the December 7, 1998, mediation, all of NECSNA's decision-makers were present except Ralph Bowden, its president, and Braden. After ten hours of negotiation, Brisben walked out when it reached an impasse with NECSNA; Brisben refused to reduce the scale of the project below 144 units and NECSNA demanded the project consist of no more than 140 units. NECSNA's representatives stayed at the mediation and the mediator collected their demands and desires and explained to them that he would reduce them to writing and attempt to get Brisben to agree to them.

On December 10, 1998, the mediator completed a written statement of the mediation which specified 140 units. The settlement required the signatures of the CPD, the city attorney, Brisben, and NECSNA. The mediator forwarded the settlement to Bowden and Krystkowiak on December 10, 1998. Bowden signed the agreement. Krystkowiak did not. All other parties eventually signed. Though Massey stated that the agreement accurately reflected NECSNA's demands, Krystkowiak explained to Peitz of the CPD that he would not agree to the negotiated settlement because he felt it did not reflect the desires of NECSNA, as communicated to the mediator. Between the time Brisben left the mediation and the time Krystkowiak informed Peitz he would not sign the agreement, Krystkowiak did not speak to any representative of Brisben.

Brisben, on the other hand, changed the design of the development in order to comply with the terms of the settlement. Accord-ingly, the CPD approved the application as modified to 140 units. On January 3, 1999, however, Bowden sent a letter to Peitz attempting to rescind NECSNA's support for the settlement. Simultaneously, Krystkowiak appealed the decision of the CPD. A second hearing before the CPC was then scheduled for January 7, 1999.

At the January 7 hearing, Krystkowiak spoke out against the plan. The minutes of that meeting designate him as NECSNA's "Design Committee Chairman." He told the CPC that NECSNA was opposing the plan because it did not comply with city code. The CPC approved the application nonetheless and Krystkowiak petitioned the city council for an appeal. Shortly after the January 7 hearing and before the city council hearing on the appeal, Krystkowiak was appointed to NECSNA's governing board.

The city council held a hearing in late January, 1999. Krystkowiak also testified at that hearing, again explaining that the plan did not comply with city code. The city council voted unanimously to reject Brisben's application, but it also listed certain criteria that, if met, would likely result in the city council's approval. The city council remanded the matter back to the CPC. Brisben, however, notified the mayor of Colorado Springs that it would not conform its design to the city council's order.

On March 4, 1999, the CPC held another hearing on Brisben's plan. This time, the CPD recommended a denial of the application as the plan failed to conform to the city council's order. Krystkowiak testified again at this hearing, arguing that the plan failed either to comply with city code or with the city council order. Despite Krystkowiak's lengthy presentation, which included demonstrative slides of the "bulk and scale" of the project, the CPC voted again to accept Brisben's application. Krystkowiak filed a final appeal to the city council.

At the second city council hearing, Krystkowiak made another thorough presentation. His testimony primarily concerned the "bulk and scale" of the project and its lack of compatibility with the neighborhood. The

---

**3.** This quote is taken from Krystkowiak's own deposition, March 3, 2000.

city council voted to reject the plan. Brisben has since abandoned all plans to go forward with the project.

Although Krystkowiak later explained that he petitioned the city council in his individual capacity, he stated in his deposition:

> I never gave it much thought as to which hat or directly who I was representing. I was always speaking on behalf of the overall neighborhood, of which the association is part of and I, as an individual am part of, and that I never thought there was a difference or that it would ever matter as to how. As design committee chairman and representing the association, I felt I was wearing multiple hats in representing the community, the association, and my own personal rights and interests.

He also swore in an affidavit filed with the trial court that "[t]he statements which I made to the Planning Commission and the City Council as attached are incorporated in this Affidavit representing my activities and presentations on behalf of the Northeast Colorado Springs Neighborhood Association."

Based on these facts, it is clear that at all relevant times, Krystkowiak was acting on behalf of NECSNA. Accordingly, to survive a motion for summary judgment on its claim against Krystkowiak, Brisben was required by our case law to allege that Krystkowiak acted with a malicious intent in inducing or causing NECSNA to breach its contract. *Trimble,* 697 P.2d at 726; *Marks,* 948 F.Supp. at 1477–78.

Here, there were no facts developed even suggesting that Krystkowiak maliciously interfered with NECSNA's contract with Brisben. To the contrary, all of the petitioning activity that forms the basis of this action occurred after NECSNA itself repudiated its contract with Brisben. Krystkowiak was merely reciting NECSNA's position to the city when he petitioned against Brisben's planned development. Even affording Brisben all favorable inferences to be gleaned from these facts, nothing indicates that Krystkowiak acted with any animus toward the parties to the mediated settlement. Thus, Brisben's claim against Krystkowiak for intentional interference with contractual

relations would have failed even on its merits.

## IV. *POME* Defense

Because Brisben wholly failed to put forth a viable claim against Krystkowiak, I would not reach Krystkowiak's asserted *POME* defense. Beyond that, I take issue with the majority's conclusion that Krystkowiak could ever avail himself of the protections of *POME* under these facts. While Krystkowiak was acting on behalf of NECSNA, his petitioning activity was subject to NECSNA's own contractual limitations; in that capacity, he was bound by NECSNA's contractual waiver and therefore had no *POME* defense.

In *POME,* we held that the right to petition the government guaranteed by the First Amendment operates to immunize a person or entity from a suit brought because of that person's or entity's petitioning activity. 677 P.2d at 1365–66. In that case, a developer sued an environmental protection group for the tort of abuse of process and civil conspiracy. *Id.* at 1362. The group had filed another lawsuit seeking to overturn a board of county commissioners' decision to approve the developer's rezoning application. *Id.* at 1363 n. 1. In its answer to the abuse of process lawsuit, the environmental protection group asserted a First Amendment right to seek redress of grievances from the government and requested a dismissal of the developer's claims. The trial court rejected that defense and the group appealed.

Ultimately, in that case, this court created a defense for civil defendants being sued for petitioning activities. The defense protects them from suit based on the First Amendment unless their petitioning activity is nothing more than a sham. *Id.* at 1367–68. Procedurally, we held that even though the motion to dismiss based on the First Amendment should, for practical purposes, be considered a motion to dismiss based on the failure to state a claim, trial courts should allow some discovery related to the defense and dispose of the motion as one for summary judgment. *Id.* at 1368–70. If the petitioning activity that forms the basis of the complained-of activity is not a "sham,"

the court should dismiss the suit under C.R.C.P. 12(b).[4] Thus, we protected the environmental group's petitioning activity under the First Amendment because it was not a "sham" and the petitioning activity itself was subject to no other limitation.

While this court has thus protected parties from civil interference with their First Amendment freedoms, we have also recognized that parties may voluntarily waive those same First Amendment rights. In *Pierce v. St. Vrain Valley School District*, 981 P.2d 600 (Colo.1999), we held that the First Amendment did not immunize members of a school board from suit for disclosing details related to a confidentiality agreement that prohibited such disclosures. There, we stated that any effect the agreement had on the defendants' First Amendment right to speak on matters of public importance was incidental and was a consequence to which they had agreed. *Id.* at 603. We took care to distinguish the defendants in the case—members of a school board who were limited in speaking freely about an employee's resignation because of the entire board's agreement to maintain confidentiality—from hypothetical defendants who were not members of the school board and who did not sign an agreement but were nevertheless facing suit for "speaking freely about what he or she knew." *Id.* at 602. While the First Amendment would immunize the latter group from suit, it would not excuse the former group from its contractual obligations merely because they would have the right to speak freely in the abstract. *Id.* at 602, 604.

In this case, NECSNA agreed not to oppose Brisben's plan. It contracted away its First Amendment freedoms in exchange for concessions from Brisben. That waiver is enforceable against NECSNA and against its agents. *See Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186, 189 (Colo.App.1988); *see also* Restatement (Second) of Agency § 387

(1958) ("Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency."). From the time of his first appearance before the CPC, Krystkowiak was NECSNA's designated spokesman and agent.

The majority today concludes that the defense created in *POME* applies because "[o]nce NECSNA's and Krystkowiak's viewpoints diverged, [Krystkowiak] was free to dissociate from the organization and continue to petition against the development in his individual capacity." Maj. Op. at 868–69. I do not agree that the facts support the conclusion that Krystkowiak ever dissociated himself from the organization. Rather, in my view, he petitioned against the development at all times in his official capacity as NECSNA's representative. Further, his position did not diverge from NECSNA's. Indeed, at the very point at which NECSNA was attempting to repudiate the mediated settlement, Krystkowiak was continuing to appear in opposition to the development.

Accordingly, I do not agree that Krystkowiak has recourse to the protections of *POME*—just as NECSNA would not have that protection. Krystkowiak never petitioned the government in his individual capacity; he appeared at all times on behalf of NECSNA, and NECSNA entered into an agreement that waived its First Amendment rights to oppose the project in exchange for significant changes in the development plan.

## V. NCA Defense

Because Brisben's claim against Krystkowiak should have been dismissed either on the pleadings or the merits, I would also not reach Krystkowiak's defense based on section 7-126-103, 2 C.R.S. (2003), of the Colorado Revised Nonprofit Corporation Act (NCA). That statute, which provides persons associated with a non-profit corporation

---

4. Where the suit involves a claim of abuse of process and civil conspiracy, the *POME* court devised a three-part test to determine whether the petitioning activity constitutes a "sham":
   (1) the defendant's administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion; and (2) the primary purpose of the defendant's petitioning activity was to harass the plaintiff or to effectuate some other improper objective; and (3) the defendant's petitioning activity had the capacity to adversely affect a legal interest of the plaintiff.
   677 P.2d at 1369.

immunity from suit in most cases, states that "[t]he directors, officers, employees, and members of a nonprofit corporation are not, as such, personally liable for the acts, debts, liabilities, or obligations of a nonprofit corporation." 7–126–103. Such immunity is subject to exception where the defendant purports to act on behalf of the corporation without a good faith belief that he has the corporation's permission to do so. § 7–122–104, 2 C.R.S. (2003).

It is not clear to me that the statute would apply in this case. Section 7–126–103 specifically provides immunity from suit to corporate personnel for the obligations, debts, and liabilities of the corporation. As applicable here, it would immunize Krystkowiak from a suit based on NECSNA's breach of contract. It does not appear to immunize corporate defendants from suit for their own intentional torts. Here, NECSNA was not and could not have been called to answer for the intentional interference with its own contract; instead, Brisben sued Krystkowiak as a representative of the corporation, but for his own intentional conduct, which could not have been attributed to the corporation.

Additionally, the statute speaks to a corporate member's financial liability for the corporation's debts or liabilities where the corporate member is being sued only by virtue of his position or membership within the corporation. It does not abrogate the otherwise applicable laws of agency and does not immunize a corporate agent from a suit based on the agent's own conduct.

Accordingly, I would find the plain language of section 7–126–103 to be inapplicable here.

### VI. Attorney Fees

Because this case should have been dismissed on the Rule 12(b)(5) motion, I would agree that Krystkowiak was entitled to an award of attorney fees under section 13–17–201. However, I would so conclude on this basis alone and therefore do not join in the majority's analysis of the interrelation between the Rule 12(b)(5) motion and the *POME* defense.

### VII. Conclusion

Brisben's lawsuit against Krystkowiak should have been dismissed upon motion under Rule 12(b)(5) because Brisben failed to state a claim against him for tortious interference with contract. Even assuming there was a valid contract between NECSNA and Brisben and that NECSNA breached it, Brisben did not plead facts that would support a claim against Krystkowiak either individually or as NECSNA's agent for interference with that contract. Additionally, when Brisben was given an opportunity to conduct discovery, it was unable to present facts sufficient to overcome summary judgment as a matter of law.

I do not believe that a *POME* defense was applicable here for two reasons: (1) Brisben's claims were susceptible to dismissal on common law grounds without recourse to the constitutional defense; and (2) Krystkowiak was acting on behalf of an association that had itself waived the right to petition the government in opposition to the development and he was bound by that waiver because of his identity with the association.

I also do not believe that the NCA need be or can be invoked here, because it protects individuals only when they are called to answer for the debts, obligations, and liabilities of the corporation, and not where, as here, they are being sued in tort for their own intentional conduct.

For all of those reasons, I respectfully concur only in the judgment of the court and do not join in the majority opinion.

I am authorized to state that JUSTICE COATS joins in the concurrence.