2015 CO 40

**Christopher BOYER and Patrick Singson, Petitioners**

v.

**HEALTH GRADES, INC., a Colorado corporation, Respondent**

Supreme Court Case No. 13SC131

Supreme Court of Colorado.

June 1, 2015

Attorneys for Petitioners: The Law Office of Paul Maxon, P.C., Paul Maxon, Boulder, Colorado

Attorneys for Respondent: Lewis Roca Rothgerber LLP, Kris J. Kostolansky, Susan S. Sperber, Denver, Colorado

JUSTICE COATS delivered the Opinion of the Court.

¶1 Boyer and Singson, defendants in a suit brought by Health Grades, petitioned for review of the court of appeals' judgment declining to affirm a favorable jury verdict on their counterclaim for abuse of process. The court of appeals remanded to the district court and ordered reversal of the verdict unless that court were to find that the claims initially brought by the plaintiff, Health Grades, were devoid of reasonable factual support or had no cognizable basis in law, in accordance with the appellate court's understanding of the mandate of *Protect Our Mountain Environment v. District Court (POME)*, 677 P.2d 1361 (Colo.1984). On rehearing, the appellate court modified its opinion, expressly evaluating the recent judgment of this court in *General Steel Domestic Sales, LLC v. Bacheller*, 2012 CO 68, 291 P.3d 1, which had found the heightened abuse of process standards of *POME* inapplicable to the filing of an arbitration complaint implicating a purely private dispute. Based on its own exegesis of *POME* and its progeny, as well as *POME*'s roots in federal jurisprudence, the court of appeals concluded that nothing in *General Steel* required the modification of its remand order.

¶2 Because we now hold that the underlying rationale for our judgment in *General Steel* concerning arbitration proceedings is

equally applicable to actions filed in courts of law, and because it is uncontested by the parties that the action filed by Health Grades involved a purely private dispute, the judgment of the court of appeals is reversed, and the matter is remanded with directions to affirm the jury's verdict.

## I.

¶3 Health Grades, Inc., which operates a website providing information to healthcare consumers about hospitals and physicians around the country, filed suit against two of its former employees, Christopher Boyer and Patrick Singson. Its complaint alleged that Boyer and Singson created competing websites during their employment at Health Grades and solicited Health Grades' clients to advertise on their competing websites, which utilized proprietary methodologies created by Health Grades to increase the probability that consumers would discover their websites. The complaint included claims of breach of the fiduciary duty of loyalty, misappropriation of trade secrets, tortious interference with prospective business advantage, and ultimately, breach of contract and conversion.

¶4 The defendants, Boyer and Singson, denied Health Grades' material allegations and asserted a counterclaim for abuse of process. In support of their counterclaim, they alleged that Health Grades' claims lacked a reasonable factual basis or cognizable basis in law and were based on allegations Health Grades largely knew to be false. They further alleged that Health Grades filed suit with the motive to harass and intimidate them and the purpose of limiting their ability to earn a living in their respective professional fields; and ultimately, they alleged that Health Grades' claims were a "sham."

¶5 The district court denied cross-motions for summary judgment and for directed verdicts and submitted the case to the jury. With regard to Health Grades' motion for directed verdict on the defendants' abuse of process counterclaim, the court simply indicated that there was sufficient evidence for the jury to find for the defendants, and it instructed the jury concerning the require-ments for a finding of an abuse of process under the heightened standard announced in *Protect Our Mountain Environment v. District Court* (*POME*), 677 P.2d 1361 (Colo. 1984). The jury rejected all of Health Grades' claims and returned a verdict for the defendants on their counterclaim. The court subsequently denied Health Grades' motion for judgment notwithstanding the verdict as well.

¶6 On appeal, the intermediate appellate court found that the district court erred by allowing the jury to decide the question, under *POME*, whether Health Grades' claims were devoid of reasonable factual support or lacked any cognizable basis in law such that they were not immune from liability under the Petition Clause of the First Amendment; and it remanded with instructions for the district court to make an independent judicial determination of that question. Shortly after the opinion was released, this court issued its opinion in *General Steel Domestic Sales, LLC v. Bacheller*, 2012 CO 68, 291 P.3d 1, holding that the heightened standard set forth in *POME* did not apply where the underlying alleged petitioning activity was the filing of an arbitration complaint concerning a purely private dispute. On rehearing, the court of appeals modified its initial opinion by including its own exegesis of *POME* and its progeny, as well as *POME*'s roots in federal jurisprudence, concluding that nothing in *General Steel* required the modification of its remand order.

¶7 Boyer and Singson petitioned for a writ of certiorari.

## II.

¶8 Less than three years ago, in *General Steel*, we were called upon to revisit in detail our jurisprudence concerning the immunization from legal liability of various forms of administrative and judicial activity, treated as the exercise of the First Amendment right to petition the government for redress of grievances. *Id.* In reviewing the heightened standard for plaintiffs suing for the "alleged misuse or abuse of the administrative or judicial processes of government," *id.* at ¶26, 291 P.3d at 8, which we promulgated in *POME* and applied in subsequent cases, we focused on two questions: first, whether the

filing of an arbitration complaint constitutes "petitioning the government" within the contemplation of *POME* and the federal case law forming the basis for that decision; and second, whether the constitutional protection for petitioning the government "for a redress of grievances" applies where the underlying alleged petitioning activity involves a purely private dispute. *Id.* at ¶ 31, 291 P.3d at 8–9. While we found it unnecessary to go beyond the arbitration context to resolve the case before us, our analysis of the second question clearly foreshadowed our holding today.

¶ 9 In *General Steel*, which involved an employment dispute strikingly similar to the one in this case, we explained that in *POME* we relied on the so-called *"Noerr–Pennington* doctrine" both for the proposition that the right to petition the government has been applied to immunize from legal liability in subsequent litigation various forms of administrative and judicial petitioning activity, and for the proposition that this right to petition is not without limits. *Id.* at ¶¶ 21–25, 291 P.3d at 7 (citing *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)). With regard to the abuse of process claim at issue in *POME*, we therefore held that a plaintiff, when faced with a motion to dismiss based on the constitutional right to petition, must meet a heightened standard to demonstrate that a defendant's petitioning activities were not immunized from liability, by showing that his administrative or judicial claims were devoid of reasonable factual support or lacked any cognizable basis in law; that the primary purpose of his petitioning activity was to harass the plaintiff or effectuate some other improper objective; and that his petitioning activity had the capacity to affect adversely a legal interest of the plaintiff. *Id.* at ¶ 26, 291 P.3d at 8 (citing *POME*, 677 P.2d at 1369). As we noted in *General Steel*, however, in *POME* we did not address the question what type of activity constitutes "petitioning the government" such that the activity is entitled to protection under the First Amendment right to petition in the first instance. *Id.* at ¶ 30, 291 P.3d at 8.

¶ 10 As an historical matter, we have applied the added protections of *POME* almost exclusively to claims based on bona fide petitioning activity regarding matters of public concern. *See POME*, 677 P.2d at 1363–64, 1368–69; *Concerned Members of Intermountain Rural Elec. Ass'n v. Dist. Court*, 713 P.2d 923, 924 (Colo.1986); *Krystkowiak v. W.O. Brisben Cos., Inc.*, 90 P.3d 859, 863, 866 (Colo.2004). *POME*, itself, involved a developer's abuse of process claim against an environmental group based on the latter's prosecution of a C.R.C.P. 106 action challenging a zoning board's decision to reclassify 500 acres of agricultural land, in order to accommodate the developer's plan for a large residential and commercial development project. 677 P.2d at 1363–64. Since then, we have held *POME*'s protections applicable to claims for abuse of process or tortious interference only twice, both times involving matters of public concern. *Concerned Members*, 713 P.2d at 924 (concerning C.R.C.P. 106 action seeking an order compelling a recall election of a rural electric cooperative's board members); *Krystkowiak*, 90 P.3d at 863, 866 (concerning individual's participation in city council hearings in opposition to a developer's application to build a large residential apartment complex near the individual's home). In neither case did we suggest that *POME*'s heightened standard would apply to a claim for abuse of process premised on the filing of a lawsuit involving a purely private dispute.

¶ 11 In *General Steel*, we expressly distinguished *In re Foster*, 253 P.3d 1244 (Colo. 2011), the sole example of a case in which we arguably applied the *POME* heightened standard to a purely private dispute, explaining that in that case we were asked to address a different question, regarding the applicability of the First Amendment and due process concerns, which we considered to underlie *POME*, to attorney discipline; and that we were not asked to address, and did not purport to resolve, the broader question concerning what type of activity constitutes petitioning the government, generally. *General Steel*, ¶ 35, 291 P.3d at 10. The effect of our holding in *Foster* was simply that this court will not exercise its "authority to regulate, govern, and supervise the practice of law in Colorado to protect the public," *People v. Kanwal*, 2014 CO 20, ¶ 6, 321 P.3d 494, 495, by imposing discipline on an attorney for

conducting abusive pro se litigation, absent a showing that the attorney's claim at least lacked any reasonable factual support or cognizable basis in law. *See Foster,* 253 P.3d at 1255 ("We note, however, that the *POME* framework need not be applied in an attorney discipline proceeding in precisely the same manner as in a civil litigation."). By contrast, we emphasized that the employment dispute in *General Steel* did not involve an attempt to vindicate the rights of the public, as in, for example, the civil rights context, such that the alleged petitioning activity could be considered a form of political expression; and we concluded that the alleged petitioning activity in that case did not merit protection under the First Amendment right to petition and *POME. General Steel,* ¶ 34, 291 P.3d at 9–10; *cf. NAACP v. Button,* 371 U.S. 415, 429, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) ("In the context of NAACP objectives, litigation is not a technique of resolving private differences; it is a means for achieving the lawful objectives of equality of treatment by all government, federal, state and local, for the members of the Negro community in this country. It is thus a form of political expression.").

¶ 12 Unlike the court of appeals, we do not understand United States Supreme Court jurisprudence as having recognized a First Amendment right to petition that includes a right of access to the courts precluding every claim or counterclaim for misuse or abuse of judicial or administrative process, including even suits involving purely private disputes, without first satisfying the *Noerr–Pennington* "sham exception," or "sham test." The Supreme Court first adopted the sham exception in the antitrust context, interpreting the Sherman Act to not apply to a publicity campaign genuinely aimed at the passage of legislation effectively restricting competition in the shipping industry. *Noerr,* 365 U.S. at 136, 81 S.Ct. 523; *see also Pennington,* 381 U.S. at 669–70, 85 S.Ct. 1585 (exempting from antitrust liability lobbying efforts by mining interests directed at executive branch officials to raise minimum wage and eliminate competition by small mining companies). The Court later extended the doctrine to apply to a resort to judicial process in the context of an antitrust suit claiming unfair trade practices by trucking companies alleg-

edly conspiring to use state and federal proceedings to thwart applications by competitors. *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510–11, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (allowing antitrust suit to proceed only after sufficient allegation that trucking company's judicial proceedings were a sham). All of these applications of the doctrine concerned petitioning the government, in one way or another, to affect legislative or administrative action.

¶ 13 In *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 743–44, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), the Court again applied the sham exception in the context of a labor dispute, barring the National Labor Relations Board from enjoining a restaurant owner's lawsuit against employees for harassing customers and threatening public safety while picketing. Rather than applying the sham exception to a purely private dispute, the Supreme Court in *Bill Johnson's* relied in significant part on the compelling state interest at stake in the maintenance of domestic peace during a labor dispute, much as it had already done in finding that federal labor laws do not preempt states from providing a civil remedy for tortious conduct committed against employers during a labor dispute. *Id.* at 741–43, 103 S.Ct. 2161 (citing *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25,* 430 U.S. 290, 306, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Linn v. United Plant Guard Workers of Am., Local 114,* 383 U.S. 53, 65, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966)). The Court's opinion makes clear that, despite the employer's suit not including a government entity as a party, it was far from a purely private dispute, instead implicating matters of significant public concern. *Id.*

¶ 14 Since *Bill Johnson's,* the Court has continued to apply its limited sham exception only in the context of federal antitrust and labor disputes. *See generally* Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance & Procedure* § 20.54(e)(ii) (5th ed. 2012 & Supp.2015); *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* —— U.S. ——, 134 S.Ct. 1749, 1757–58, 188 L.Ed.2d 816 (2014) (declining to

apply sham exception to determine whether attorney fees are awardable in patent actions, in part because it "finds no roots in the text of [the patent statute]"). While we have in the past presumed a constitutional grounding for the *Noerr–Pennington* doctrine rather than attributing it solely to construction of the federal antitrust and labor statutes, and we see no reason to abandon that presumption today, there is hardly agreement among the courts or commentators concerning either the source or scope of the doctrine. *See, e.g., Londono v. Turkey Creek, Inc.,* 609 So.2d 14, 18 (Fla.1992) (declining to adopt the federal sham test for state malicious prosecution cases); *see also Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 208 F.3d 885, 890 (10th Cir.2000) ("Antitrust cases that grant *Noerr–Pennington* immunity do so based upon *both* the Sherman Act and the right to petition. These precedents, founded in part upon a construction of the Sherman Act, are not completely interchangeable with cases based solely upon the right to petition."). And even in one of its strongest statements in support of a constitutional grounding for the right of access to agencies and courts, the Supreme Court indicated that various abuses of the administrative and judicial processes "cannot acquire immunity by seeking refuge under the umbrella of 'political expression.'" *Cal. Motor,* 404 U.S. at 512–13, 92 S.Ct. 609.

¶ 15 Whether petitioning the government for the redress of grievances, as protected by the First Amendment, includes every resort to "the channels and procedures of state and federal agencies and courts," *id.* at 511, 92 S.Ct. 609, regardless of purpose or involvement of the public interest, and whether the sham exception of the *Noerr–Pennington* doctrine has any constitutional basis and, even if so, whether it provides the sole limitation on First Amendment immunity for petitioning the government are questions the resolution of which remains unclear in the jurisprudence of the Supreme Court. However, they are also questions upon the resolution of which our holding today does not depend. We believe there are strong policy reasons for continuing to provide protection against the resort to judicial or administrative process for improper purposes, whether or not the claims at issue have some objec-

tive justification. We also believe that a distinction between the resort to legal process implicating purely private disputes and the resort to legal process implicating matters of public concern is one that comports with Supreme Court usage. Therefore, unless and until our understanding of controlling Supreme Court jurisprudence is proven wrong, we find the heightened standards we articulated in *POME,* reflecting the sham exception of the *Noerr–Pennington* doctrine, to be inapplicable to a resort to administrative or judicial process implicating purely private disputes.

### III.

¶ 16 Because we now conclude that the underlying rationale for our judgment in *General Steel* concerning arbitration proceedings is equally applicable to actions filed in courts of law, and because it is uncontested by the parties that the action filed by Health Grades involved a purely private dispute, the judgment of the court of appeals is reversed, and the matter is remanded with directions to affirm the jury's verdict.