Colorado Court of Appeals Opinions || April 7, 2016

Colorado Court of Appeals -- April 7, 2016
2016 COA 52. No. 14CA2328. City of Aurora v. 1405 Hotel.

 
 
 
 COLORADO COURT OF APPEALS

 
 2016 COA 52

 
 

  

 Court of Appeals No. 14CA2328
 Arapahoe County District Court No. 13CV31506
 Honorable Charles M. Pratt, Judge

 City of Aurora, Colorado; Aurora Urban Renewal Authority; and RIDA Development Corp,

 Plaintiffs-Appellants and Cross-Appellees,

 v.

 1405 Hotel, LLC; 550 15th Owner, LLC; Broadmoor Hotel Inc.; Brown Palace Hotel Associates Limited Partnership; Cheyenne Mountain Conference Resort; CHSP Denver LLC; DiamondRock Cherry Creek Tenant LLC; DiamondRock Denver Downtown Tenant LLC; HEP Denver Ltd., d/b/a Magnolia Hotel; Oxford Hotel 2005 Holdings LLC; and Westminster Boulevard Finance, LLC,

 Defendants-Appellees and Cross-Appellants.

  JUDGMENT AFFIRMED

 Division I
 Opinion by JUDGE TAUBMAN
 Miller and Fox, JJ., concur

 Announced April 7, 2016

 Kutak Rock LLP, Thomas W. Snyder, Daniel C. Lynch, Michael M. Frandina, Denver, Colorado; Michael J. Hyman, City Attorney, Aurora, Colorado, for Plaintiffs-Appellants and Cross-Appellees City of Aurora, Colorado and Aurora Urban Renewal Authority

 Fairfield & Woods, P.C., John M. Tanner, Denver, Colorado, for Plaintiff-Appellant and Cross-Appellee RIDA Development Corp.

 Lewis Roca Rothgerber Christie LLP, James M. Lyons, Hilary D. Wells, Jessica L. Fuller, Hermine Kallman, Denver, Colorado, for Defendants-Appellees and Cross-Appellants

 ¶1       In July 2013, eleven hotels[1] along Colorado’s Front Range (collectively, the Hotels) submitted a petition to the Colorado Economic Development Commission (CEDC) requesting that CEDC require the City of Aurora (Aurora) to submit a new application for an $81 million tax subsidy (the Gaylord Project) after the initial company that had been awarded the subsidy, the Gaylord Entertainment Company, assigned its interest to RIDA Development Corporation (RIDA). The Attorney General (AG) denied the petition on behalf of the CEDC.[2] The Hotels filed an action in the Denver District Court (Denver lawsuit). Both the Denver District Court and a division of our court affirmed the AG’s denial of the Hotels’ petition. 1405 Hotel, LLC v. Colo. Econ. Dev. Comm’n, 2015 COA 127, ___ P.3d ___ (1405 Hotel I). However, in response to the Hotels’ alleged "conspir[acy] . . . to interfere with the financing and development of the [p]roject," plaintiffs, the City of Aurora, the Aurora Urban Renewal Authority, and RIDA (collectively, the Aurora parties), sued the Hotels in October 2013.

 ¶2       The Aurora parties now appeal the judgment of the Arapahoe District Court (district court), which dismissed their complaint after the court found the Hotels’ complaint in the Denver lawsuit was immunized under the First Amendment based on Protect Our Mountain Environment, Inc. v. Dist. Court, 677 P.2d 1361 (Colo. 1984) (POME). We affirm.

 I. Background

 ¶3       The underlying facts of this case are set forth in 1405 Hotel I. In the Denver lawsuit, the Hotels sued the CEDC and Aurora alleging four claims for relief: (1) a claim in the nature of mandamus brought under C.R.C.P. 106(a)(2) to compel the CEDC to require Aurora to submit a new application for the Gaylord Project, as required by the Colorado Regional Tourism Act (RTA); (2) a claim brought pursuant to the State Administrative Procedure Act (APA), section 24-4-106(4), C.R.S. 2015, seeking review of the CEDC’s denial of their petition for reconsideration and approving the Gaylord Project; (3) a claim for declaratory relief pursuant to C.R.C.P. 57 and section 13-51-105, C.R.S. 2015, challenging the constitutionality of section 309 of the RTA, section 24-46-309, C.R.S. 2015; and (4) a claim seeking a declaration that procedural irregularities in the CEDC’s approval of the initial Gaylord Project invalidated the RTA award.

 ¶4       In December 2013, Aurora moved for a C.R.C.P. 12(c) judgment on the pleadings, asserting that the Hotels lacked standing to bring claims one, two, and four. Aurora conceded that the Hotels had standing to bring their third claim, but maintained that the third claim should be resolved in Aurora’s favor on the merits. Following a hearing in March 2014, the Denver court granted Aurora’s C.R.C.P. 12(c) motion in an oral ruling. In July 2014, the Denver District Court entered a written order denying the Hotels’ C.R.C.P. 59 motion. A division of our court affirmed in 1405 Hotel I, ¶1, ___ P.3d at ___.

 ¶5       However, after the Hotels filed their appeal in the Denver lawsuit but before the 1405 Hotel I decision, the Aurora parties filed this lawsuit before the Arapahoe District Court, asserting claims against the Hotels for intentional interference with contract, intentional interference with business expectancy, abuse of process, and civil conspiracy. First, the Hotels filed an answer and asserted several counterclaims. Later the same day, the Hotels moved to dismiss pursuant to C.R.C.P. 12(b)(5), arguing their initial complaint was protected by the First Amendment privilege to petition the government for redress of grievances as described in POME. Also on the same day, the Hotels filed a separate C.R.C.P. 12(b)(5) motion to dismiss against RIDA’s claims individually.

 ¶6       The court granted the Hotels’ POME motion and dismissed all four of the Aurora parties’ claims. Although the court held that one of the claims brought by the Hotels in the Denver lawsuit lacked a cognizable basis in law and was therefore a "sham," it nevertheless granted the Hotels’ motion because it concluded that POME requires an entire lawsuit to be frivolous in order to remove the First Amendment privilege.

 ¶7       On appeal, the Aurora parties seek reversal of the district court’s order and contend: (1) the court abused its discretion in refusing to allow discovery and a hearing; (2) the court erred in determining that three of the Hotels’ claims in the Denver lawsuit had reasonable factual support or a cognizable basis in law; and (3) the court erred in dismissing their complaint despite concluding that one of the Hotels’ claims from the Denver lawsuit was a "sham." We disagree.

 ¶8       In their cross-appeal, the Hotels contend (1) the court erred in concluding that the Hotels lacked probable cause to bring an as-applied constitutional challenge to section 309 of the RTA under Colorado Constitution article II, section 11 and therefore their third claim was not a sham; and (2) we should affirm the C.R.C.P. 12(b)(5) dismissal of RIDA’s claims. We agree with the Hotels’ first contention and do not address their second contention.

 II. Nature of the Hotels’ Motion

 ¶9       At the outset, in considering what standard of review to apply to the POME motion to dismiss, we need to consider whether the Hotels’ POME motion was properly decided as a motion to dismiss or whether it should have been converted into a motion for summary judgment. The Aurora parties contend that POME requires a motion to dismiss be converted into a motion for summary judgment. Because the outcome would be the same regardless of whether the motion was treated as a C.R.C.P. 12(b)(5) motion or as a motion for summary judgment, we perceive no reversible error.

 A. Standard of Review

 ¶10       We review de novo a court’s order granting a motion to dismiss under C.R.C.P. 12(b)(5). Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo. 2011). We also review de novo questions of constitutional fact and law. In re Foster, 253 P.3d 1244, 1250 (Colo. 2011) (addressing de novo whether the lower court properly applied POME).

 ¶11       We review a district court’s entry of summary judgment de novo. McIntyre v. Bd. of Cty. Comm’rs, 86 P.3d 402, 406 (Colo. 2004). Summary judgment should only be entered "when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law." Id. In reviewing a summary judgment, "the nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." Busse v. City of Golden, 73 P.3d 660, 665 n.10 (Colo. 2003).

 B. Applicable Law

 ¶12       A C.R.C.P. 12(b)(5) motion to dismiss tests the formal sufficiency of a plaintiff’s complaint. Dorman v. Petrol Aspen, Inc., 914 P.2d 909, 911 (Colo. 1996). A motion to dismiss is properly granted only when it appears beyond doubt that no set of facts can prove that the plaintiff is entitled to relief. Id. Thus, we may affirm a district court’s decision to grant a defendant’s motion to dismiss when the factual allegations do not, as a matter of law, support the plaintiff’s claim for relief. Id.

 ¶13       In reviewing a motion to dismiss, the court must accept all factual allegations as true and view them in the light most favorable to the plaintiff. Denver Post, 255 P.3d at 1088. The court is not permitted to consider any information or facts outside the confines of that pleading. Allen v. Steele, 252 P.3d 476, 481 (Colo. 2011). Nevertheless, a court may consider documents referenced in a complaint and matters of which it may take judicial notice without converting a motion to dismiss into a motion for summary judgment. Walker v. Van Laningham, 148 P.3d 391, 397 (Colo. App. 2006).

 ¶14       The First Amendment immunity defense raises the question of whether a plaintiff’s complaint states a claim upon which relief can be granted; therefore, courts should give the parties a reasonable opportunity to present all material pertinent to the motion and, when appropriate, should treat the motion as one for summary judgment. POME, 677 P.2d at 1368-69. Under summary judgment, the parties may present materials outside the pleadings, including affidavits and other records. Krystkowiak v. W.O. Brisben Cos., Inc., 90 P.3d 859, 870 (Colo. 2004).

 C. Analysis

 ¶15       The district court treated the POME motion to dismiss as a C.R.C.P. 12(b)(5) motion. The Aurora parties contend that POME requires a motion to dismiss be converted into a motion for summary judgment. The Hotels, in their appellate briefs, contended that their motion did not need to be converted to a motion for summary judgment and that the trial court properly dismissed the complaint under C.R.C.P. 12(b)(5); however, at oral argument, the Hotels argued that the district court should have converted the motion to one for summary judgment but that there was no reversible error.

 ¶16       However, we need not decide whether the trial court properly dismissed the motion under C.R.C.P. 12(b)(5) or should have converted the motion to one for summary judgment because we conclude, under the circumstances of this case, that the outcome would have been the same under either rule.[3]

 ¶17       We note that in describing the POME procedures, the Krystkowiak court indicated that "summary judgment is often the appropriate procedure for determining the merits of a First Amendment defense because it allows courts to consider matters outside the pleadings, while at the same time, eliminate sham claims and defenses in an expedited manner." Krystkowiak, 90 P.3d at 870 (emphasis added). This quoted language supports the conclusion that the supreme court’s language in POME indicating that a motion to dismiss based on First Amendment allegations should be converted into a summary judgment motion does not apply to every case.

 ¶18       Therefore, either the trial court did not err and properly dismissed the Hotels’ C.R.C.P. 12(b)(5) motion, or, even if the Hotels’ motion should have been converted into one for summary judgment, because the Aurora parties failed to prove the first objective prong of the POME test, which is a question of law, as discussed below, any error did not affect the outcome of the case because the court would have considered the same evidence when ruling on the motion.

 III. Discovery and a Hearing

 ¶19       The Aurora parties contend the district court abused its discretion when it refused to allow discovery and a hearing before granting the Hotels’ motion to dismiss. Since no discovery is permitted to a party responding to a Rule 12(b)(5) motion to dismiss, we will assume, for purposes of this contention, that the Hotels’ motion should have been considered as a summary judgment motion. We perceive no reversible error.

 A. Standard of Review

 ¶20       We review a district court’s refusal to allow discovery for an abuse of discretion. A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy, 93 P.3d 598, 604 (Colo. App. 2004).

 B. Analysis

 ¶21       The district court held that because the Aurora parties were unable to articulate any need for discovery on the first, objective prong of the POME test, they were not entitled to pursue discovery before the court ruled on the Hotels’ motion. We agree.

 ¶22       It is not an abuse of discretion to deny a C.R.C.P. 56(f) request if a movant has failed to demonstrate that the proposed discovery is necessary and could produce facts that would preclude summary judgment. A-1 Auto Repair, 93 P.3d at 604. C.R.C.P. 56(f) provides that a court may deny summary judgment or order a continuance to permit discovery if it appears from the opposing party’s affidavits that the opposing party cannot, for reasons stated, present by affidavit facts essential to justify its opposition to summary judgment. Waskel v. Guar. Nat’l Corp., 23 P.3d 1214, 1222 (Colo. App. 2000).

 ¶23       The issue before the district court was the threshold objective inquiry under POME, which addresses whether the Hotels’ petitioning activities were devoid of reasonable factual support or lacked any cognizable basis in law. POME, 677 P.2d at 1369. If, and only if, the Aurora parties satisfied that threshold inquiry, would the subjective prong of POME, which tests whether the petitioning activities were pursued for an improper purpose, become germane.

 ¶24       The Aurora parties contend they needed discovery for the first prong of POME to support their allegation that the Hotels’ claims lacked a cognizable basis in law because the Hotels disbelieved their own claims. They further contend that they had a right to pursue discovery based on the following language in POME:

 Because this constitutional defense raises the question of whether the plaintiff’s complaint states a claim upon which relief can be granted, the court should give the parties a reasonable opportunity to present all material pertinent to the motion and should treat the motion as one for summary judgment, see C.R.C.P. 12(b), to be resolved under the heightened standard we herein adopt.

 POME, 677 P.2d at 1368-69. We disagree.

 ¶25       The Hotels’ actual belief was not relevant as to whether the Hotels’ claims had a reasonable basis in law or fact, which is an objective inquiry. Thus, the Aurora parties’ discovery request was irrelevant until the Aurora parties otherwise established the first prong of POME. Because they did not establish their need to pursue discovery related to the first prong of POME, the court did not abuse its discretion in denying their request for further discovery and a hearing. See W.O. Brisben Cos., Inc. v. Krystkowiak, 66 P.3d 133, 138 (Colo. App. 2002) (affirming the dismissal of the POME-related motion to dismiss because the complaint failed to state a claim upon which relief could be granted), aff’d on other grounds, 90 P.3d 859.

 IV. Application of POME

 ¶26       The Aurora parties contend that this case involves a purely private dispute and therefore POME does not apply. In the alternative, they argue that three of the Hotels’ claims in the Denver lawsuit — the first, second, and fourth claims — lacked reasonable factual support or a cognizable basis in law. On cross-appeal, the Hotels argue that their third claim, which the district court found to be a sham, had reasonable factual support or a cognizable basis in law. Last, the Aurora parties contend the court erred when it dismissed their complaint, even though it found one of the Hotels’ claims in the Denver lawsuit to be a "sham." We discuss each argument in turn.

 ¶27       First, we conclude the dispute here is not private. Second, we affirm the district court’s conclusion that the first, second, and fourth claims had reasonable factual support or a cognizable basis in law. Third, we reverse the district court’s conclusion that the third claim, the as-applied constitutional challenge in the Hotels’ initial complaint, did not have reasonable factual support or a cognizable basis in law. Finally, we affirm the district court’s dismissal of the Aurora parties’ complaint. Given our conclusion that all of the Hotels’ claims had reasonable factual support or a cognizable basis in law, we do not address the Aurora parties’ arguments as to whether all of the claims must be "sham" claims for the Hotels to lose their First Amendment protection.

 A. Purely Private Dispute

 ¶28       The Aurora parties contend that POME does not apply because this is a purely private dispute. We disagree.

 1. Applicable Law

 ¶29       The heightened standards in POME, which we discuss further below, are inapplicable to purely private disputes, as opposed to cases implicating matters of public concern. Boyer v. Health Grades, Inc., 2015 CO 40, ¶15, 359 P.3d 25, 29.

 2. Analysis

 ¶30       We conclude the dispute between the Aurora parties and the Hotels is not purely private. In Boyer, the dispute was purely private because it was between a health services information provider and its two former employees. Id. at ¶3, 359 P.3d at 26.

 ¶31       The dispute at issue here is analogous to the public dispute in POME. See POME, 677 P.2d at 1363-64, 1368-69; see also Boyer, ¶10, 359 P.3d at 27. There, a company filed an application in Jefferson County to rezone 507 acres of land to construct 465 residential units, a conference center, retail and office space, recreational facilities, an early education center, and over 1700 parking spaces. POME, 677 P.2d at 1362-63. After giving public notice and conducting public hearings, the Jefferson County Board of County Commissioners (Board) approved the application. Id. at 1363. POME, pursuant to C.R.C.P. 106, filed an action against the Board and the company, seeking to overturn the Board’s approval of the application on the grounds that the Board had exceeded its jurisdiction and abused its discretion. Id. Without expressly stating that the case did not concern a purely private dispute, the POME court noted that the underlying case involved a challenge to the Board’s rezoning decision and allegations that the Board had, among other things, violated several state statutes and county land use requirements. Id. at 1369.

 ¶32       Here, the Hotels, pursuant to C.R.C.P. 106, filed an action against CEDC, a state government agency, and Aurora, a city, seeking to overturn CEDC’s approval of Gaylord’s application. The Hotels did not sue any private party. They claimed CEDC, a state agency, disregarded its implementing statute in approving the Gaylord Project’s tax subsidy.

 ¶33       In their joint answer-reply brief, the Aurora parties argue, "there was no public interest in the Denver lawsuit." However, this argument is illogical, given their later admission that "the public would have been disserved if the Hotels had been successful in the Denver lawsuit because the public would have been deprived of a large-scale hotel that would have both served as a lodging alternative and also generated substantial economic growth[.]" If the project were to have a direct impact on the public, as the Aurora parties contend, then it is necessarily a public dispute, not a purely private one. Boyer, ¶15, 359 P.3d at 29. Therefore, we conclude the dispute, which arises from a petition to a state agency for judicial review of state agency action regarding an award of millions of dollars in taxpayer subsidies to a city to develop a project it deems to be of "major public importance," is not purely private.

 B. Non-Sham Claims

 ¶34       The Aurora parties contend that three of the Hotels’ claims in the Denver lawsuit — the first, second, and fourth claims — lacked reasonable factual support or a cognizable basis in law. We disagree.

 1. Applicable Law

 ¶35       In POME, the supreme court articulated a rule balancing the competing interests of the First Amendment guarantee of the right to petition the government for redress of grievances with protecting the government and other parties from baseless litigation. POME, 677 P.2d at 1364, 1366.

 ¶36       Plaintiffs alleging a defendant’s misuse or abuse of the administrative or judicial processes of government must make a sufficient showing to permit the court to reasonably conclude that the defendant’s petitioning activities were not immunized from liability under the First Amendment; these claims are considered "sham" claims. Id. at 1368-69.

 ¶37       Courts must first determine whether the suing party presented sufficient facts to permit the court to reasonably conclude that the defendant’s action was devoid of objectively reasonable factual support or, if so supported, was lacking a cognizable basis in law. Id. at 1370; Prof’l Real Estate Inv’rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 50 (1993) (PRE); see also Foster, 253 P.3d at 1251 (noting that POME and PRE set forth "nearly identical principles"). If the court finds that this showing has been made, it must determine whether the plaintiff presented sufficient facts to permit the court to reasonably conclude that the defendant brought its action primarily for harassment or some improper purpose. POME, 677 P.2d at 1370. Last, the plaintiff must show that the defendant’s petitioning activity had the capacity to adversely affect a legal interest of the plaintiff. Id. at 1368-69.

 ¶38       A repetitious pattern of baseless litigation is not necessary for application of the sham exception. Id. at 1367. Loss on the merits of the underlying proceeding, although instructive, is not determinative on the issue of objective baselessness. See PRE, 508 U.S. at 65 (holding that a copyright action in which the party lost on summary judgment was not sham litigation).

 2. Analysis

 ¶39       The Hotels’ first claim was brought under C.R.C.P. 106(a)(2), which allows for mandamus relief under certain circumstances. The Hotels requested the Denver District Court require the CEDC to rule on the Hotels’ complaint and direct Aurora to submit a new application for the Gaylord Project. The Aurora parties argue that the first claim lacked probable cause because the Hotels did not have standing.[4] We disagree.

 ¶40       First, the Hotels argue that lack of standing can never form the basis for removing the First Amendment privilege and that, in any event, they had an objectively reasonable factual basis or a cognizable basis in law to support both their standing and the merits of this claim. The Aurora parties argue that a claim can be considered baseless if a particular party should have known it lacked standing. However, we need not decide this issue here because the district court decided, and we agree, the Hotels had probable cause under both standing and the merits.

 ¶41       The district court found that "objective reasonable litigant[s] could believe they had a chance at winning on the merits under ‘competitor’ standing if they could show a direct harm to their interests." See also Cloverleaf Kennel Club, Inc. v. Colo. Racing Comm’n, 620 P.2d 1051, 1054 (Colo. 1980). We agree and conclude an objectively reasonably litigant could believe it had more than "some chance" in successfully asserting competitor standing.

 ¶42       Therefore, the district court did not err in determining that the Hotels’ first claim in the Denver lawsuit had reasonable factual support or a cognizable basis in law.

 ¶43       The Hotels’ second claim sought review and reversal under section 106(4) of the APA "[t]o the extent that the [AG Letter] constitutes a decision of the CEDC." The Aurora parties argue that the second claim lacks any cognizable basis for the same reasons as the first claim. Therefore, for the reasons above, we conclude the court did not err in determining that the Hotels’ second claim in the Denver lawsuit had reasonable factual support or a cognizable basis in law.

 ¶44       The fourth claim in the Hotels’ complaint sought a declaration that procedural irregularities in the CEDC’s approval of the initial Gaylord Project invalidated the RTA award. Aurora argues the fourth claim was baseless simply because the Hotels advanced an interpretation of the incentive agreement between Gaylord and the Aurora parties that disagreed with the Aurora parties’ interpretation. We disagree. The existence of a disagreement regarding the interpretation of a contract does not render the claim devoid of any reasonable basis such that constitutional protections should be disregarded. If we were to conclude to the contrary, almost every litigated issue involving differing interpretations of contracts would be sham litigation.

 ¶45       Here, the Hotels contended that the incentive agreement had been automatically terminated because a judicial validation proceeding had concluded unsuccessfully and Gaylord had failed to give certain assurances to Aurora within ninety days of its receipt of notice of the validation proceeding.[5] We conclude the Hotels’ interpretation had reasonable factual support or a cognizable basis in law based on the terms of the incentive agreement.

 ¶46       Finally, we note that the fact that the division ruled in 1405 Hotel I that the Hotels lacked standing to bring their first, second, and fourth claims does not mean that the claims lacked a reasonable factual basis or a cognizable basis in law, especially where the division’s analysis of the standing issue resulted in a published decision. See PRE, 508 U.S. at 65.

 C. Sham Claims

 ¶47       The Hotels argue in their cross-appeal that their third claim, which the district court found to be a sham, had reasonable factual support and a cognizable basis in law. We agree.

 ¶48       The district court determined that the Hotels’ third claim was objectively unreasonable and was asserted without probable cause. The Hotels contend that the district court erred in so concluding and ignored the as-applied nature of their constitutional challenge. In their third claim, the Hotels alleged that section 309 of the RTA was unconstitutional as applied if it prevented the CEDC from reconsidering the tax subsidy award to the Gaylord Project, given its later assignment to RIDA and changing circumstances suggesting a tax subsidy was no longer necessary. Accordingly, the Hotels alleged that not allowing the CEDC to rescind the tax subsidy would constitute an irrevocable grant in violation of Colorado Constitution article II, section 11. We conclude that the Hotels’ third claim had an objectively reasonable basis in fact and law.

 ¶49       First, the Aurora parties contend the Hotels did not preserve this argument for appeal. We disagree and conclude the Hotels did not have to preserve this issue. Even though the district court found the third claim was a sham, we can nevertheless agree with the district court on the ultimate outcome but on different grounds. See Roque v. Allstate Ins. Co., 2012 COA 10, ¶7, 318 P.3d 1, 3 ("We can affirm for any reason supported by the record, even reasons not decided by the trial court.").

 ¶50       We note that the district court, with no discussion, cursorily stated that the section 309 claim was asserted without probable cause "because of the plain-faced words of the statute." We agree with the Hotels that the court’s statement disregarded the limited as-applied nature of the Hotels’ constitutional challenge.

 ¶51       In their third claim, the Hotels requested that the CEDC require a new application and reconsider its tax subsidy award to the Gaylord Project because the award for the Gaylord Project was conditional, had expired, and the CEDC had never vetted the Gaylord Project with RIDA as the developer. Section 309 provides that the CEDC may only revoke an award if no substantial work has commenced on a project within five years. § 24-46-309(2), (4). As noted, the Hotels asserted an as-applied constitutional challenge, asserting that if section 309 prevented the CEDC from reconsidering the award, it would constitute an irrevocable grant in violation of Colorado Constitution article II, sections 11 and 12. In 1405 Hotel I, ¶56, ___ P.3d at ___, the division stated that the Hotels’ constitutional challenge was a contingent claim based on the Denver District Court’s conclusion that the initial approval of the Gaylord Project constituted final agency action and, therefore, the Hotels’ action was untimely. Because the division concluded that a different date constituted final agency action, it did not address the merits of the Hotels’ constitutional claim, concluding that it was actually contingent. Id.

 ¶52       To come within the constitutional prohibition under Colorado Constitution article II, section 11, a grant of special privileges must be contained in the law, rather than a contract. Compare City of Englewood v. Mountain States Tel. & Tel. Co., 163 Colo. 400, 407, 431 P.2d 40, 44 (1967) (stating that statute granting right to construct utility lines on public streets was special privilege or franchise under article II, section 11, but not unconstitutional since state had right to modify, alter, or withdraw it at any time), with Perl-Mack Enters. Co. v. City & Cty. of Denver, 194 Colo. 4, 9, 568 P.2d 468, 472 (1977) (rejecting challenge under article II, section 11 because complained-of grant was set forth in business contract, not legislation). The Hotels argue that the special privilege here is the tax subsidy contained in the RTA.

 ¶53       Second, the grant of special privilege must be irrevocable. City & Cty. of Denver v. Qwest Corp., 18 P.3d 748, 759 (Colo. 2001). Although section 309 contains a revocation mechanism after five years for failure to commence substantial work, we agree with the Hotels that they alleged that CEDC had granted an irrevocable tax subsidy because section 309 does not permit revocation based upon material changes or noncompliance with the RTA.

 ¶54       Third, because the RTA is a relatively new and untested statute, we agree that the Hotels could have perceived some likelihood of success based on the above arguments. PRE, 508 U.S. at 65. At the time of the Hotels’ petition, no court had construed any of the RTA’s provisions, including how the CEDC should address circumstances where a project undergoes a material change after initial approval.

 ¶55       Given the as-applied nature of the challenge, its conditional basis, and that it was brought under a new statute, we conclude the Hotels had probable cause to bring their third claim. Therefore, the district court erred when it concluded the Hotel’s third claim was a sham.

 ¶56       Accordingly, because we conclude that the Hotels’ four claims had a reasonable factual basis and a cognizable legal basis, the district court properly granted the Hotels’ motion to dismiss. In light of our conclusion that none of the Hotels’ claims in the Denver lawsuit was a sham, we need not decide the issue of how POME applies to mixed sham and non-sham complaints.

 V. Dismissal of RIDA’s Claims

 ¶57       Because we affirm the district court’s dismissal of the Aurora parties’ complaint, we need not address the Hotels last contention concerning the dismissal of RIDA’s claims under C.R.C.P. 12(b)(5). VI. Attorney Fees and Costs

 ¶58       Pursuant to C.A.R. 28(a)(6), the Hotels, in their briefs, request that, to the extent we affirm dismissal of any claims under C.R.C.P. 12(b)(5), we award them attorney fees and costs pursuant to section 13-17-201, C.R.S. 2015, and remand to the district court to enter such an award. The Hotels further request an award of costs pursuant to C.A.R. 39(a).

 ¶59       As noted, during oral argument the Hotels conceded that we should treat their motion to dismiss the Aurora parties’ claims as a motion for summary judgment. Therefore, they waived the right to attorney fees pursuant to section 13-17-201.

 ¶60       However, the Hotels also request an award of costs pursuant to C.A.R. 39(2), which provides that "if a judgment is affirmed, costs are taxed against the appellant." Therefore, the Hotels are entitled to an award of costs. See Mackall v. JPMorgan Chase Bank, N.A.,

 2014 COA 120, ¶55, 356 P.3d 946, 956.

 VII. Conclusion

 ¶61       The judgment is affirmed.

 JUDGE MILLER and JUDGE FOX concur. 

 [1] The hotels, plaintiffs in the prior lawsuit, are now defendants in the case before us. They are 1405 Hotel, LLC; 550 15th Owner, LLC; Broadmoor Hotel Inc.; Brown Palace Hotel Associates Limited Partnership; Cheyenne Mountain Conference Resort; CHSP Denver LLP; DiamondRock Cherry Creek Tenant LLC; DiamondRock Denver Downtown Tenant, LLC; HEP Denver Ltd., d/b/a Magnolia Hotel; Oxford Hotel 2005 Holdings, LLC; and Westminster Boulevard Finance, LLC.

  

 [2] On appeal, the Hotels do not challenge the authority of the AG to issue the letter on behalf of the CEDC.

 [3] The Hotels filed their motion to dismiss after they filed their answer with counterclaims. The Aurora parties do not contend that the Hotels were prohibited from filing a C.R.C.P. 12(b)(5) motion to dismiss after filing their answer. Instead, they only note in passing that the Hotels filed a C.R.C.P. 12(c) motion. In fact, the trial court could not have considered the Hotels’ motion under Rule 12(c) because the Aurora parties had not responded to the Hotels’ counterclaims. The Hotels do not cite any authority which would permit them to file their motion to dismiss after their answer. Technically, "a post-answer [C.R.C.P. 12(b)(5)] motion is untimely and . . . some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the plaintiff’s failure to state a claim for relief." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 408 (3d ed. 2004); see also BSLNI, Inc. v. Russ T. Diamonds, Inc., 2012 COA 214, ¶11, 293 P.3d 598, 601-02. However, because neither party raised these contentions, we need not address this issue.

 [4] We note that, in light of the decision in 1405 Hotels, LLC v. Colorado Economic Development Commission, 2015 COA 127, ¶17, ___ P.3d ___, ___, the Aurora parties have withdrawn their claims that the Hotels’ first and second claims were shams because they were untimely.

 [5] The validation proceeding was required by section 11-57-213, C.R.S. 2015. Aurora was required to file a validation proceeding to obtain a judicial determination that several of the financing mechanisms were consistent with applicable law.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Court of Appeals Opinions || April 7, 2016

Back